### In re GRAND JURY PROCEEDINGS.

#### No. 85–6156.

United States Court of Appeals,
Sixth Circuit.

Argued March 5, 1986.
Decided March 11, 1988.

---

**14.** We also deny the defendants-appellees' motion for sanctions.

Jay Topkis, Paul, Weiss, Rifkind, Wharton, Garrison, Lawrence S. Bader, Grand and Ostrow, Jeffrey Slade, New York City, A.J. Jolly, Jolly and Blau, Newport, Ky., for appellant.

Jack Auspitz, Charles S. Barquist, Parker, Auspitz, Neesmann, Delehanty, New York City, for John Doe II.

William G. Schaefer (argued), Sidley and Austin, Washington, D.C., for Public Service Co. of Indiana, Inc.

Robert Sulkin, Culp, Dwyer, Guderson and Grater, Timothy K. Thorson, Bradley D. Stam, Seattle, Wash., for Washington Public Power Supply System Kansas Power & Light Co.

Diana Parker (argued), Grand & Ostrow, New York City, for John Doe I.

Before WELLFORD and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.[*]

DAVID A. NELSON, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Eastern District of Kentucky granting a petition filed by Public Service Company of Indiana, Inc. ("PSI") for disclosure to that company, under a protective order, of transcripts of certain grand jury testimony.[1] PSI filed its petition for disclosure under Federal Rule of Criminal Procedure 6(e)(3)(C)(i), which authorizes a court to direct the disclosure, "in connection with a judicial proceeding," of grand jury materials that would otherwise have to be kept secret.

The judicial proceeding in connection with which PSI sought disclosure of the grand jury materials at issue here is an antitrust action filed by PSI in a federal court in Indiana. The defendants in PSI's Indiana antitrust case include Commonwealth Electric Company, Inc., Lord Electric Company, Inc., and Peter Matthews, Lord Electric's president.[2] Lord Electric and Matthews were among those indicted earlier in the Eastern District of Kentucky on charges arising out of a scheme to rig the bids on a contract awarded in 1978 for the electrical work at a power plant (Unit II of the Spurlock Generating Station) that was being built for a power cooperative in Maysville, Kentucky. (See *In re: Grand Jury Proceedings,* 797 F.2d 1377 (6th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 876, 93 L.Ed.2d 831 (1987), for a description of the indictment.) In 1979 a joint venture consisting of Commonwealth Electric and Lord Electric was awarded a contract for the electrical work at a PSI construction project at Marble Hill, Indiana. PSI alleges, in its Indiana lawsuit, that it was the victim of a bid-rigging scheme that involved the Marble Hill project, and it maintained before the Kentucky district court that it needed the Kentucky grand jury materials for use in its Indiana lawsuit.

Federal Rule of Criminal Procedure 6(e)(3)(E), adopted in 1983 after the Supreme Court's decision in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), provides in pertinent part that "[i]f the judicial proceeding giving rise to the petition [for disclosure of grand jury materials] is in a federal district court in another district, the court *shall* transfer the matter to that court unless it can reasonably obtain sufficient knowledge of the proceeding to determine whether disclosure is proper." (Emphasis supplied.) Rule 6(e)(3)(E) was not called to the Kentucky district court's attention, and no one argued that it might be applicable. We are not satisfied, however, that the district court did in fact have sufficient knowledge of PSI's Indiana lawsuit to determine the propriety of disclosure in

---

[*] The Honorable Leroy J. Contie, Jr., became Senior Circuit Judge on July 1, 1986.

1. The district court also ordered disclosure to Washington Public Power Supply System and Kansas Power and Light Company, but it appears that those organizations, having now settled the antitrust suits in connection with which the grand jury materials were wanted, no longer have any need for them.

2. *Public Service Company of Indiana, Inc. v. Commonwealth Electric Company, Inc., et al.,* Civil Action No. IP 85–86–C on the docket of the United States District Court for the Southern District of Indiana.

this case. Lacking such knowledge, the Kentucky district court, like its counterpart in *Douglas Oil,* was being "called upon to make an evaluation entirely beyond its expertise." *Douglas Oil,* 441 U.S. at 228, 99 S.Ct. at 1677. Therefore, in accordance with the mandate of Rule 6(e)(3)(E), we shall vacate the Kentucky district court's order and remand the matter to that court with instructions to transfer it to the United States District Court for the Southern District of Indiana unless the Kentucky court finds that it can reasonably obtain sufficient knowledge of the Indiana proceeding to enable it to make a fully informed determination as to whether disclosure is needed to avoid a possible injustice in PSI's Indiana proceeding, whether any such need for disclosure outweighs the need for continued grand jury secrecy, and whether PSI's request has been structured to prevent disclosure of anything beyond what is actually needed to avoid an injustice, or possible injustice, in the Indiana case.

I

In 1983 Lord Electric and Peter Matthews were among those indicted by a federal grand jury in Montana. That indictment involved an alleged conspiracy to rig bids on power plant projects in the states of Washington and Indiana, one of which projects was PSI's Marble Hill job. The case went to trial, and the defendants were acquitted.

The Kentucky indictments for bid-rigging on the Spurlock project were handed up in mid–1984, after the acquittal in the Montana case. Based on their acquittal in Montana, defendants Lord Electric and Matthews moved for dismissal, on double jeopardy grounds, of the Kentucky indictment. That motion, along with others, was referred to a magistrate. In a report that was placed under seal several weeks after its issuance, the magistrate recommended rejection of the double jeopardy argument. (The district court accepted the magistrate's recommendation, on a basis that permitted an interlocutory appeal, and in *In re: Grand Jury Proceedings, supra,*

this court affirmed the denial of the defendants' motion to dismiss the indictment on double jeopardy grounds.)

PSI obtained a copy of the magistrate's report before it was placed under seal, and found that it contained references to pleadings and briefs citing transcripts of the testimony of various witnesses before various grand juries, including the Kentucky grand jury by which Lord Electric and Matthews had been indicted. It appeared that citations to grand jury testimony could also be found in the transcript of oral argument on the motions with which the magistrate's report and recommendation dealt. PSI promptly filed a Rule 6(e)(3)(C)(i) petition seeking disclosure of all sealed court records and proceedings concerning the motions for dismissal on double jeopardy grounds. The district court's ruling on that petition is what is on appeal here.

In the brief accompanying its petition PSI represented that it had filed a civil antitrust action against Lord Electric, Matthews and others in the Southern District of Indiana; that in discovery proceedings in the Indiana case the defendants were denying the existence of any relationship between the Marble Hill project and other projects (including Spurlock) on which Lord Electric had bid; and that this position was inconsistent with that taken in the motion addressed by the magistrate, where the defendants asserted a double jeopardy defense predicated on a claim that any conspiracy in which they were participants was broad enough to include both the Marble Hill project (as to which they had already been acquitted) and the Spurlock project. PSI argued that it had a particularized need for the grand jury testimony on which this double jeopardy defense was based, and it contended that any need for preserving the secrecy of the grand jury materials was outweighed by PSI's need for discovery.

None of the pleadings in PSI's Indiana case was placed before the Kentucky court, and PSI's brief gave that court only the most general description of the Indiana case and the course of the discovery proceedings that had been conducted there.

The magistrate's report was the subject of an oral argument held before the Kentucky district court on December 5, 1985, and the court heard argument at the same time on PSI's petition for disclosure. In the course of the latter argument the district judge obtained oral confirmation of his understanding that the Indiana case was a civil antitrust action, and he was told that PSI had filed document requests to which Lord Electric and Matthews had objected. The objections, the court was told, boiled down to assertions that "no other project was related to Marble Hill" and that anything more than three years old would be irrelevant to the issues in the Indiana proceeding. The court was told that motions to compel had been filed in Indiana and that briefing thereon was nearly complete. Counsel for PSI offered to furnish the court copies of the documents filed in the Indiana proceeding, but the offer evoked no response.

Ruling from the bench at the conclusion of PSI's part of the hearing, the district judge announced that the petition for disclosure would be granted, except as to two designated grand jury transcripts. Written orders were entered a few days later directing the United States to allow PSI to inspect and copy various "double jeopardy records," including (subject to the exception noted above) the testimony of those witnesses whose grand jury testimony had been made available to the magistrate and whose names were to be furnished to the United States by PSI as persons who had appeared or were scheduled to appear either as deposition witnesses or as trial witnesses in PSI's Indiana lawsuit. PSI was prohibited from using the records for any purpose other than prosecution of its antitrust case. One of the orders recited that PSI had demonstrated "a particularized need for disclosure of the requested records that outweighs any remaining need for secrecy," and the order stated that "the basis for the Court's finding of particularized need and determination to permit limited disclosure of the records sought were [sic] set forth during a hearing convened by the court on December 5, 1985, and will not be repeated herein." We shall return to the stated basis for the court's finding and determination later in this opinion.

Lord Electric, Peter Matthews, and a third defendant, Donald McCabe, appealed the disclosure orders to this court, and the operation of the orders was stayed pending appeal. Two developments that occurred subsequent to the filing of the notice of appeal merit notice at this point. In June of 1986 the Indiana district court entered an order denying, as premature, a petition filed by PSI for disclosure of grand jury transcripts. Stating that PSI had noticed no depositions, and had served the defendants with only one request for documents and a single short interrogatory, the Indiana judge decided that PSI had failed to make a sufficient showing of particularized need. The petition was denied without prejudice to renewal at a later time.

In April of 1987 defendants Lord Electric, Peter Matthews and Donald McCabe entered into a plea agreement pursuant to which each has now pleaded guilty to one count of the Kentucky indictment. Under the plea agreement the defendants received immunity from further criminal prosecution in connection with their past activities in the electrical contracting industry. The grand jury that indicted the defendants is no longer in existence, and PSI suggests that there is now even less need for preserving the secrecy of the grand jury proceedings than there was when the Kentucky district court granted the petition for disclosure.

PSI's suggestion may well have merit. It is clear, however, that the need for grand jury secrecy does not evaporate altogether when a criminal case has been concluded and the grand jury discharged; whether, in this instance, the continuing need for secrecy is outweighed by the legitimate needs of the plaintiff in the Indiana antitrust action is not an open and shut question, and we believe it is a question that ought to be answered by someone who is familiar with the Indiana antitrust action.

II

The "General Rule of Secrecy" that normally prohibits disclosure of matters occur-

ring before grand juries (see Federal Rule of Criminal Procedure 6(e)(2)) reflects a "strong" and "long-established policy" from which departures are permitted, the Supreme Court has said, only in cases of "compelling necessity;" *i.e.*, where there is proof that without access to the grand jury materials a litigant's position would be "greatly prejudiced" or "an injustice would be done." *United States v. Procter & Gamble*, 356 U.S. 677, 681–82, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). This policy, the Supreme Court has explained, is designed

> "to encourage all witnesses to step forward and testify freely without fear of retaliation. The witnesses in antitrust suits may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers. The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Id.* at 682, 78 S.Ct. at 986.

■ The need for secrecy continues, if not with unabated strength, even after the grand jury has decided, as it had decided in *Procter & Gamble*, not to return an indictment. The need for secrecy continues even after the grand jury has been dissolved, as it had been in *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Douglas Oil Co. v. Petrol Stops Northwest, supra;* and *United States v. John Doe, Inc. I*, 481 U.S. ——, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987). And the need for secrecy continues even after the persons indicted by the grand jury have pleaded guilty, as they had in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). "[I]n considering the effects of disclosure on grand jury proceedings," the Supreme Court has told us, "the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674.

A known likelihood of ultimate disclosure, as the Court said in *Sells Engineering*, 463 U.S. at 432, 103 S.Ct. at 3142,

"renders considerably more concrete the threat to the willingness of witnesses to come forward and to testify fully and candidly. If a witness knows or fears that his testimony before the grand jury will be routinely available for use in ... civil litigation ... he may well be less willing to speak for fear that he will get himself into trouble in some other forum. *Cf. Pillsbury Co. v. Conboy*, 459 U.S. 248, 263, n. 23, [103 S.Ct. 608, 617, n. 23, 74 L.Ed.2d 430] (1983)."

Among the "several distinct interests served by safeguarding the confidentiality of grand jury proceedings" are the following, all of which have implications for the functioning of future grand juries:

> "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.... Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673 (footnote omitted).

■ Against the need for grand jury secrecy must be weighed the need to prevent a possible injustice in other litigation. Before a decision in favor of disclosure can be made, the following requirements must be satisfied:

> "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674 (footnote omitted).

Where a particularized need for disclosure has been demonstrated, a district court that is properly seized of the question is

given wide discretion to decide whether it is the need for secrecy that predominates, or the need for disclosure. *John Doe, Inc., I,* 481 U.S. at ——, 107 S.Ct. at 1664, 95 L.Ed.2d at 110.

Which court, as between the court responsible for the grand jury and the court responsible for the civil litigation, is normally best equipped to decide how the need for disclosure stacks up against the need for secrecy? In *Douglas Oil* under circumstances remarkably similar to the circumstances of the instant case, the Supreme Court said that

> "[t]he possibility of an unnecessary breach of grand jury secrecy in situations such as this is not insignificant. A court more familiar with the course of the antitrust litigation might have seen important differences between the allegations of the indictment and the contours of the conspiracy respondents sought to prove in their civil actions—differences indicating that disclosure would likely be of little value to respondents, save perhaps as a mechanism for general discovery. Alternatively, the courts where the civil proceedings were pending might have considered disclosure at that point in the litigation to be premature; if there were to be conflicts between petitioners' statements and their actions in the criminal proceedings, the court might have preferred to wait until they ripened at depositions or even during testimony at trial.

> "Under these circumstances, the better practice would have been for the District Court [responsible for the grand jury], after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the court where the civil cases were pending." *Douglas Oil,* 441 U.S. at 229–30, 99 S.Ct. at 1678 (footnote omitted).

The practice suggested in *Douglas* is now prescribed by Federal Rule of Criminal Procedure 6(e)(3)(E), which provides in pertinent part as follows:

> "If the judicial proceeding giving rise to the petition is in a federal district court in another district, the court shall transfer the matter to that court unless it can reasonably obtain sufficient knowledge of the proceeding to determine whether disclosure is proper. The court shall order transmitted to the court to which the matter is transferred the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand jury secrecy."

*Douglas Oil,* the case that gave rise to Rule 6(e)(3)(E), involved grand jury documents that were in the custody of a United States district court in California and a civil antitrust case that was pending in the district of Arizona. The gasoline dealers who were the plaintiffs in the Arizona antitrust case petitioned the California district court for release of certain grand jury transcripts thought to show that the defendants in the antitrust case, who had pleaded *nolo contendere* to criminal charges in the California district court, had been untruthful in their responses to the plaintiffs' discovery requests in the civil action in Arizona. The Antitrust Division of the United States Department of Justice appeared and indicated that the government had no objection to the plaintiffs receiving copies of grand jury transcripts that had already been made available to the defendants. Each of these circumstances has a direct parallel to the case at bar.

■ Just as the Kentucky district court did in the case at bar, the California district court heard oral argument on the plaintiffs' disclosure petition and proceeded to rule on the petition without consultation with the judge before whom the civil antitrust action was pending.

> "Appreciating that it was largely ignorant of the Arizona civil suits, the court nonetheless made a judgment concerning the relative needs for secrecy and disclosure. The court based its decision largely upon the unsupported assertions of counsel during oral argument before it, supplemented only by the criminal indictment returned by the grand jury, the civil complaints, and petitioners' response

to a single interrogatory that appeared to be inconsistent with petitioners' *nolo contendere* plea in the criminal case." *Douglas Oil,* 441 U.S. at 229, 99 S.Ct. at 1678 (footnote omitted).

The parallel to the instant case is, again, a close one, except that here the district court appears to have seen neither the civil antitrust complaint nor any response by the defendants to the discovery requests served in the civil case.

Because the California district court's determination to grant the disclosure petition "necessarily involved consideration of the nature and status of the Arizona proceedings, matters peculiarly within the competence of the Arizona District Court," *id.,* at 224, 99 S.Ct. at 1675, and because the California district court "was called upon to make an evaluation entirely beyond its expertise," the Supreme Court found that the district court had abused its discretion in releasing the grand jury materials requested by the civil antitrust plaintiffs. *Id.* at 228–29, 99 S.Ct. at 1677. We find that a similar abuse of discretion occurred in the case at bar.

Nothing in the reasons the Kentucky district judge gave for his decision during the oral argument persuades us that the decision—which may well prove to have been correct on the merits—would not better have been left to the district court in Indiana.

As to the need for secrecy, the district judge found "that the fact that the grand jury investigation is over and the witnesses have already testified—it is pretty well known who they are anyway—mitigates the need for grand jury secrecy...." Both circumstances—the circumstance that the grand jury investigation is over and the fact that the identity of many of the witnesses has become known—are significant, and both ought to be noted in the "written evaluation of the need for continued grand jury secrecy" that Rule 6(e)(3)(E), Fed.R. Crim.Proc., directs the Kentucky court to transmit to the Indiana court if the matter is transferred there. It will also be appropriate for the judge to include in his evaluation his thoughts on the government's position on the disclosure question. (The judge attached relatively little importance to the government's position.)

As to the need for disclosure, the Kentucky district judge began his bench comments thus:

"THE COURT: I think they've shown particularized need. The Supreme Court recognized in the *Douglas Oil* case that a pending civil case in a related matter is a sufficient showing of particularized need. I think there's something to be said for the fact that someone ought not to be able to take an inconsistent position with regard to whether there is a national conspiracy or not for one purpose, in one place in one court and another purpose, in another place in another court."

The judge observed elsewhere in his remarks that the defendants had been "very careful to footnote in all their memorand[a] and oral argument [that] they're not admitting anything" as to the existence of a conspiracy; "[t]hey're saying, 'But if there was such a conspiracy then our acquittal would be double jeopardy.'" Whether that assertion by the defendants—"if there was such a conspiracy then our acquittal would be double jeopardy"—was in fact inconsistent with any position taken by the defendants in the Indiana litigation can best be determined, we believe, by a judge who has read the pleadings in that litigation and who has direct knowledge of the discovery requests served there, the responses to those discovery requests, and the contents of the briefs and any other materials filed in connection with PSI's motion to compel.

The district court's next significant point on the need for disclosure was that in *United States v. Fischbach and Moore, Inc.,* 776 F.2d 839 (9th Cir.1985), Lord Electric had challenged an order granting disclosure (to Washington Public Power Supply System and Kansas Power & Light) of grand jury transcripts that had been read into the record as evidence before a grand jury in the Western District of Washington; although the Court of Appeals for the Ninth Circuit reversed an order directing disclosure, the Kentucky district judge was

"greatly influenced" by the Ninth Circuit's analysis and felt that it supported his decision in the case at bar. We are not so sure it does; what the Court of Appeals found, in *Fischbach and Moore,* was that "the district court underestimated the need for continued secrecy in this case, and that the record before us is insufficient for us to conduct a meaningful review of Petitioners' evidence of a compelling need for disclosure." 776 F.2d at 843. The record before us in the case at bar is hardly any more conducive to meaningful review of the "evidence" of a compelling need for disclosure. It is important to recognize, moreover, that in the *Fischbach and Moore* litigation the court that conducted the criminal trial in which the grand jury testimony was used was the same court in which the civil action was pending. The judge presiding over the civil action, indeed, was the same judge who had presided over the criminal trial. In the case at bar, on the other hand, although the Kentucky district judge had read the magistrate's report and the briefs, he acknowledged that "I certainly have not read all the transcripts," and he had no direct knowledge at all of the antitrust case in Indiana.

The next finding made by the Kentucky district court on the need for disclosure was this: "I find that there is a compelling and specific need for those witnesses because of the complexity of this entire situation." It is precisely because of the complexity of this situation, however, that a judge who has a detailed understanding of the Indiana antitrust proceedings would seem to be in the best position to evaluate PSI's alleged need for disclosure and the precise metes and bounds of any such need.

Later in his remarks, the Kentucky district judge said this:

"I find the strongest reason for the compelling need is the reason of having this for impeachment. It's one thing to say, 'Well, you can take their deposition in a civil case.' But a person may be a lot more willing to shade his testimony in a civil case in a deposition before a notary than he would be sitting in that grand jury room."

The point has merit (see *Fischbach and Moore,* 776 F.2d at 845), but on the record before us at this stage it can hardly be considered controlling. The Supreme Court has said "in weighing the need for disclosure, the court could take into account any alternative discovery tools available," *Sells,* 463 U.S. at 445, 103 S.Ct. at 3149 (see also *John Doe, Inc. I,* 481 U.S. at ——, 107 S.Ct. at 1664, 95 L.Ed.2d at 110), and in the 1986 order denying PSI's petition for disclosure the Indiana court thought it significant that "PSI has not demonstrated, at this time, that normal discovery procedures would be fruitless."

Finally, the Kentucky district court observed that

"there is a great public interest in not having a lot of duplication of proceedings. And there is a lot of judicial economy that will be saved here or accomplished here by everybody's having these transcripts available for those people who are legitimately going to be witnesses on the civil case."

As the Supreme Court stated in *Sells,* however,

"Of course, it would be a substantial help to a Justice Department civil attorney if he had free access to a storehouse of evidence compiled by a grand jury; but that is of a different order from the prosecutor's need for access. The civil lawyer's need is ordinarily nothing more than a matter of saving time and expense. The same argument could be made for access on behalf of any lawyer in another Government agency, or indeed, in private practice. We have consistently rejected the argument that such savings can justify a breach of grand jury secrecy. In most cases, the same evidence that could be obtained from the grand jury will be available through ordinary discovery or other routine avenues of investigation. If, in a particular case, ordinary discovery is insufficient for some reason, the Government may request disclosure under a (C)(i) court order." *Sells,* 463 U.S. at 431, 103 S.Ct. at 3142 (citations omitted).

In *Sells* the Supreme Court was talking about saving the time of people paid by the taxpayers; the expense in question there would be a charge on the treasury of the United States. If savings of that kind may not be sufficient to justify a breach of grand jury secrecy, saving the time and expense of private litigants may not be either, desirable though such savings undoubtably are and reasonable though it may be for courts to take the prospect of such savings into consideration.

For the reasons stated, the orders of the district court are REVERSED. The matter is REMANDED to the district court with instructions either to transfer it to the United States District Court for the Southern District of Indiana, in accordance with Rule 6(e)(3)(E), Fed.R.Crim.Proc., or to reconsider the matter after obtaining sufficient knowledge of the Indiana proceeding to determine what grand jury materials, if any, may properly be disclosed to PSI.

WELLFORD, Circuit Judge, dissenting.

I respectfully dissent because, in the words of Fed.R.Crim.P. 6(e)(3)(E), I believe the district court in which the grand jury sat could "reasonably obtain sufficient knowledge of the proceeding to determine whether disclosure is proper." The district judge involved was certainly no stranger to these proceedings, and defendants themselves had sought grand jury information from that judge.

I would affirm after analyzing the criteria to be used in cases of this kind as set out in *Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed. 2d 156 (1979). *See also In re Grand Jury Proceedings*, 800 F.2d 1293 (4th Cir.1986) and *United States v. John Doe*, 481 U.S. ——, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987). The need for grand jury secrecy is substantially reduced under the circumstances of this case. Finally, I believe it is unnecessary to involve further delay by a remand to another court.