**Kit WAGAR and Lexington Herald Leader Co., Plaintiffs–Appellants,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and Kentucky Utilities Co., Defendants–Appellees.**

No. 87–5676.

United States Court of Appeals, Sixth Circuit.

Argued March 25, 1988.

Decided May 23, 1988.

Rehearing Denied July 25, 1988.

---

Thomas W. Miller (argued), Miller, Griffin and Marks, Lexington, Ky., for plaintiffs-appellants.

Malcolm Y. Marshall (argued), Barnett and Alagia, David Lott Hardy, Louisville, Ky., Leonard Schaitman, Dept. of Justice,

Civil Div., Mary K. Doyle (argued), Washington, D.C., for defendants-appellees.

Before LIVELY and GUY, Circuit Judges, and COHN, District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

In a case not presently before this court, the Department of Justice commenced antitrust proceedings against the Kentucky Utilities Company. Upon settlement of the antitrust litigation, the district court presiding over that matter issued an order directing the Department of Justice to destroy all documents (with certain exceptions) which it had obtained from Kentucky Utilities during the course of discovery proceedings. After attempting to intervene in the antitrust litigation and to enjoin that district court's order to destroy the documents, plaintiffs Kit Wagar and the Lexington Herald Leader Company brought this separate action under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA or the Act), seeking release of the documents which the Department of Justice had obtained from Kentucky Utilities during the course of discovery in the antitrust case. The court below dismissed the plaintiffs' FOIA suit, finding that the Department of Justice was not acting improperly by withholding the documents but, rather, was merely complying with the order issued by the district court presiding over the antitrust proceedings. The court therefore concluded that the Department of Justice could not be compelled to release the documents under the FOIA. Because we agree with the district court's conclusion that the Department of Justice did not improperly withhold the documents, and that the Department of Justice therefore could not be compelled to release the documents under the FOIA, we affirm.

I.

On February 26, 1981, the Department of Justice (Department) brought suit on behalf of the United States against the Ken-

---

[*] Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

tucky Utilities Company under section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. *United States v. Kentucky Utilities Co.*, No. 81–52 (E.D.Ky. Feb. 26, 1981). The Department alleged in that suit that Kentucky Utilities had attempted to monopolize and had monopolized the sale and transmission of electric power at wholesale both to its municipal customers and to a college in Kentucky by preventing other suppliers from selling electric power to those customers. During the course of the antitrust litigation, the government obtained thousands of pages of documents from Kentucky Utilities through discovery. The parties ultimately agreed that the suit should be dismissed and, pursuant to the parties' agreement, the district court issued a consent order on June 11, 1986, which dismissed the complaint with prejudice in accordance with Fed.R.Civ.P. 41(a). The portion of the court's June 11, 1986, order which is pertinent to this appeal states:

> [W]ithin thirty days of entry of this Stipulation and Order, Plaintiff shall certify to the Defendant and to this Court, upon oath of its counsel, that it has destroyed all copies of documents obtained through discovery procedures herein, including copies thereof made by the certifying party, except that: (1) documents made exhibits to depositions and required to be maintained by ATR 2710.1 [regulations promulgated under the FOIA] shall not be required to be destroyed, and (2) no documents subject to an outstanding request under the Freedom of Information Act ("FOIA") shall be required to be destroyed until the request and any related litigation over the request, including appeals, is resolved.

The Department began destroying documents in accordance with this order on June 13, 1986.

Subsequently, on June 16, 1986, Kit Wagar, a staff writer for the Lexington Herald Leader Company (Kit Wagar and the Lexington Herald Leader Company will hereinafter be referred to collectively as Wagar), wrote to the Department requesting, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, copies of the documents obtained during the antitrust litiga-

tion. Upon receipt of that request on June 20, 1986, the Department discontinued its destruction of the documents. At that point, less than fifty percent of the documents had been destroyed by the Department pursuant to the June 11, 1986, order of the district court.

On July 14, 1986, the Department filed a Certification of Document Destruction with the district court in which it stated that it had not destroyed either the documents that had been made exhibits to depositions or the documents related to Wagar's FOIA request. Upon receipt of this information, Kentucky Utilities sought and obtained an ex parte order which directed the Department not to produce or deliver to anyone other than the parties to the antitrust litigation any of the documents obtained through discovery in that case prior to a hearing scheduled on the matter for July 25, 1986. The day before that hearing, Wagar filed a motion to intervene and a motion for a temporary restraining order to prohibit the Department from destroying any of the requested documents. At the hearing on July 25, 1986, the district court denied Wagar's motion to intervene but allowed Wagar to participate in all further proceedings in the case. The district court also stayed its June 11, 1986, document destruction order until Kentucky Utilities "has had an opportunity to exhaust its administrative remedies" and Wagar "has had its right to pursue administrative remedies."

Following the hearing, the Department filed with the court a report in which the Department stated that it had made a preliminary determination that none of the documents requested by Wagar were subject to any of the FOIA exemptions listed at 5 U.S.C. § 552(b). The Department also advised the court that because the documents might contain confidential business information, the Department intended to notify Kentucky Utilities of its preliminary conclusion and allow the company fifteen days to raise any arguments it might have against disclosure. The Department also noted in its report that it had interpreted the provision in the June 11, 1986, order which states that "no

documents subject to an outstanding request under the Freedom of Information Act ... shall be required to be destroyed until the request and any related litigation over the request" has been fully litigated, as referring only to FOIA requests that had been received as of the date the order was filed, i.e., June 11, 1986. Accordingly, the Department represented that it was prepared to destroy the remaining documents on October 16, 1986, unless instructed otherwise by the district court.

Thereafter, Kentucky Utilities moved for an order requiring the Department to destroy the documents pursuant to the June 11, 1986, order. Wagar filed a motion seeking either an interpretation or modification of the June 11, 1986, order which would result in release of the documents. In response, the Department advised the court that, to the extent that the other parties' motions could be construed as motions for clarification, it joined in those motions. The Department also advised the court that the Department would not destroy the documents pending disposition of the motions. On November 4, 1986, the district court directed the Department to advise the court "whether the documents requested by 'intervening parties' Kit Wagar and the Lexington Herald–Leader in their FOIA request are in the exclusive control of the plaintiff [Department of Justice] or whether any or all of the requested documents, or copies, have been heretofore filed with this Court and made a as [sic] part of the record in this action." The Department subsequently filed a report in which it explained that many of the documents requested had been made exhibits to depositions and that most of those exhibits had been filed with the court.

After a hearing on December 17, 1986, the district court issued an order dated December 18, 1986, directing, in pertinent part, as follows:

That all unfiled depositions, originals or copies thereof, together with any exhibits attached thereto, shall be filed on or before January 1, 1987.

That counsel for the Intervenors, by 12 O'Clock noon on Friday, December 19, 1986, shall file another action in a court of competent jurisdiction, for determination of issues of whether documents requested by Intervenors are exempt, or covered, by the Freedom of Information Act, or whether the Order of June 11, 1986 precludes the production of said documents.

That the United States shall not produce, nor destroy, the requested documents until a court of competent jurisdiction has ruled on said issues.

That in the event no such action is filed by December 19, 1986, the June 11, 1986 Order shall become operative.

Wagar did not appeal the court's order. Instead, Wagar filed the instant action, which will hereinafter be referred to as the FOIA action, on December 18, 1986. Before proceeding to our discussion of the instant FOIA action, however, it is appropriate to outline briefly the events which transpired in the antitrust litigation after the FOIA action was filed.

In April of 1987 (after the FOIA action was dismissed by the court below), Wagar filed a motion in the antitrust case for a temporary restraining order to prevent the Department from destroying the documents subject to the June 11, 1986, order. Wagar also renewed his motion to intervene, and further moved the court to make findings as to whether the documents covered by the June 11, 1986, order constituted trade secrets. Wagar later served interrogatories and requests for admissions on the Department. The Department moved for a protective order to prevent discovery. The Department's motion was denied on May 29, 1987. Thereafter, in June of 1987, the Department filed a motion for reconsideration, and Wagar filed another motion to amend the June 11, 1986, order. This time, Wagar sought a declaration that rather than looking to the June 11, 1986, date of issuance of the destruction order, that the Department must respond to any FOIA request filed prior to the *actual* destruction of the documents. On October 13, 1987, the district court issued an order stating that all of the pending motions "are passed" until an opinion is rendered by the Sixth Circuit in *Ashland Oil v. Courier*

*Journal,* No. 87–5939 (6th Cir. Aug. 21, 1987) (referred to in the court's order as *Howes v. Atkins* ).[1] It therefore appears that, at this juncture, Wagar's motion for findings and his motion to amend the June 11, 1986, order, along with the government's motion for reconsideration of the denial of a protective order, are still pending in the antitrust litigation.

We now turn in our discussion to the instant action brought by Wagar under the FOIA, naming the Department of Justice as defendant. Jurisdiction lies in the district court under section 552(a)(4)(B) of the Act. Wagar seeks an injunction preventing the government from withholding the documents. In addition, he seeks attorney fees and costs.

Kentucky Utilities moved to intervene in this case pursuant to Fed.R.Civ.P. 24(a). The government took no position on the motion. Wagar, however, opposed the motion, claiming that Kentucky Utilities has no interest in the subject matter of the litigation; that disposition of the case would not impair or impede Kentucky Utilities' ability to protect its interests; and that Kentucky Utilities' interests are adequately protected by the Department.

Meanwhile, the Department filed a motion to dismiss Wagar's complaint. The Department argued first that the requested documents were under the court's control and, therefore, not agency records subject to disclose under the FOIA. Second, the Department argued that even if they were agency records, the documents had been properly withheld since they were subject to the June 11, 1986, destruction order issued by the district court presiding over the antitrust proceedings. Finally, the De-

partment advised the court that if the June 11, 1986, order were interpreted as not requiring destruction, it was prepared to release the documents since it had determined that they were not subject to any of the FOIA exemptions listed at 5 U.S.C. § 552(b).

Kentucky Utilities then joined in the government's motion to dismiss and also filed its own motion to dismiss and for judgment on the pleadings. Kentucky Utilities argued that the requested documents were not agency records subject to disclosure under the FOIA because at all times throughout the antitrust litigation, or at a minimum, after the court's June 11, 1986, order, the documents were subject to the court's control.

In response to these motions, Wagar argued that the documents at issue in the case are indeed agency records and are subject to release; that the June 11, 1986, order of the district court in the antitrust litigation provides for their release; and that if the June 11, 1986, order permits destruction, then it is not a lawful order.

Following a hearing, the district court issued an order on April 9, 1987, granting both Kentucky Utilities' motion to intervene and the government's motion to dismiss. In reaching the decision on the motion to dismiss, the district court relied on *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980), and upon a finding that the June 11, 1986, order issued by the district court in the antitrust litigation "fairly read on its four corners precludes the production of documents...."

1. *Ashland Oil* is a complex civil litigation matter involving a shareholder derivative action and claims for wrongful discharge. A great deal of discovery took place between the parties, and Ashland Oil sought and was awarded in the district court a comprehensive protective order regarding the documents which it had turned over to the various parties during the course of discovery. At the conclusion of the shareholder derivative action, but prior to commencement of the trial on the wrongful discharge claims, the Courier Journal wrote to the district court seeking access to some of the documents produced in discovery. The district court thereup-

on vacated its earlier protective order and issued an order stating that a party or witness who sought continued protection of any given document must file a motion with the court which specifically designates the document and the legal basis for continued protection of the document. Thereafter, according to the court's order, the motion for continued protection may be challenged by any party or member of the public or press. Ashland Oil sought and was granted the right to an interlocutory appeal of the district court's decision to vacate its earlier comprehensive protective order. The case is pending before the Sixth Circuit.

Wagar now appeals the April 9, 1987, order issued by the court below, arguing that the court erred by failing to find that the June 11, 1986, order issued by the district court presiding over the antitrust case is void, or that it is ambiguous and should therefore be construed to comply with public policy.[2]

## II.

The narrow issue before this court on appeal is whether the district court properly found that Wagar was precluded from compelling the Department to produce the documents in question under the FOIA. In *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 384–86, 100 S.Ct. 1194, 1200–02, 63 L.Ed.2d 467 (1980), the Supreme Court set forth a comprehensive review of the legislative history and purpose of the FOIA:

> The Freedom of Information Act gives federal district courts the jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). This section requires a showing of three components: the agency must have (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Committee for Freedom of the Press* [445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980)]. In this case the sole question is whether the first requirement, that the information has been "improperly" withheld, has been satisfied.
>
> . . . .
>
> The Freedom of Information Act was intended "to establish a general philosophy of full agency disclosure," S.Rep. No. 813, at 3, and to close the "loopholes which allow agencies to deny legitimate information to the public," *ibid.* The attention of Congress was primarily focused on the efforts of officials to prevent release of information in order to hide mistakes or irregularities committed by the agency. *Ibid.;* H.R.Rep. No. 1497, at 6; Source Book 69 (remarks of

Rep. Monagan); *id.,* at 70 (remarks of Rep. Rumsfeld); *id.,* at 73–74 (remarks of Rep. Hall), and on needless denials of information. Examples considered by Congress included the refusal of the Secretary of the Navy to release telephone directories, the decision of the National Science Foundation not to disclose cost estimates submitted by unsuccessful contractors as bids for a multimillion-dollar contract, and the Postmaster General's refusal to release the names of postal employees. See H.R.Rep. No. 1497, at 5–6.

> Thus Congress was largely concerned with the unjustified suppression of information by agency officials. S. Rep. No. 813, at 5. Federal employees were denying requests for documents without an adequate basis for nondisclosure, and Congress wanted to curb this apparently unbridled discretion. Source Book 46–47 (remarks of Rep. Moss); *id.,* at 61 (remarks of Rep. Fascell); *id.,* at 70 (remarks of Rep. Rumsfeld); *id.,* at 71 (remarks of Rep. Skubitz); *id.,* at 80 (remarks of Rep. Anderson). It is in this context that Congress gave the federal district courts under the Freedom of Information Act jurisdiction to order the production of "improperly" withheld agency records. It is enlightening that the Senate Report uses the terms "improperly" and "wrongfully" interchangeably. S.Rep. No. 813, at 3, 5, 8.

The facts in *GTE Sylvania* are very similar to the facts of this case. In *GTE Sylvania*, a Delaware federal district court had issued an injunction against the Consumer Products Safety Commission (CPSC) forbidding it from releasing to the public certain documents which CPSC had obtained through orders and subpoenas. 15 U.S.C. § 2076(b)(1), (b)(3). After the injunction was issued, Consumers Union filed suit in the United States District Court for the District of Columbia seeking release of the documents under the FOIA. CPSC's defense to the suit filed by Consumers Union was that CPSC was not "improper-

---

2. Wagar also claims that the court below erred by allowing Kentucky Utilities to intervene in the instant FOIA proceeding. *But see infra* note 6.

ly" withholding the documents because it was withholding the documents in order to comply with the injunction issued by the Delaware district court. The Supreme Court agreed with CPSC, reasoning that far from acting "improperly," CPSC was in lawful obedience of the injunction issued by the Delaware federal court, and the District of Columbia federal court was without power to require the agency to release the documents in light of the Delaware court's order.[3]

In so holding, the Court reasoned:

At all times since the filing of the complaint in the instant action the agency has been subject to a temporary restraining order or a preliminary or permanent injunction barring disclosure. There simply has been no discretion for the agency to exercise. The concerns underlying the Freedom of Information Act are inapplicable, for the agency has made no effort to avoid disclosure; indeed, it is not the CPSC's decision to withhold the documents at all.

445 U.S. at 386, 100 S.Ct. at 1201.

■ The reasoning employed by the Court in *GTE Sylvania* is particularly relevant in the instant case where the district court presiding over the antitrust litigation issued the June 11, 1986, order directing the Department to destroy all documents obtained in the course of that litigation, with the exception of both the documents made exhibits to depositions and the documents subject to any outstanding FOIA request. By declining to release the documents sought by Wagar, the Department was not acting improperly; rather, it was acting pursuant to the order issued by the district court which was presiding over the antitrust action.

Wagar argues that the portion of the June 11, 1986, order which excludes from destruction those documents "subject to an outstanding request" under the FOIA is ambiguous and can be construed to refer either to only those documents subject to a FOIA request which was filed prior to June 11, 1986, or to those documents subject to a FOIA request which was filed any time before the documents are destroyed, regardless of whether the request was filed before or after June 11, 1986. We agree with the district court's finding that the meaning of the order is clear. The order was issued June 11, 1986, and refers to FOIA requests which are "outstanding." If a request was not outstanding on June 11, 1986, a plain reading of the order shows that it does not require the Department to preserve those documents. Therefore, the Department cannot be held to have acted improperly by withholding those documents from Wagar when it did so in accordance with the plain language of the June 11, 1986, order. *See Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980) (in order to establish jurisdiction under section 552(a)(4)(B), must make a showing that agency improperly withheld agency records).

In *GTE Sylvania,* the Court pointed out that Congress enacted the FOIA out of a concern with "the unjustified suppression of information by agency officials," and that "[f]ederal employees were denying requests for documents without an adequate basis for nondisclosure, and Congress wanted to curb this apparently unbridled discretion." 445 U.S. at 385, 100 S.Ct. at 1201 (citations omitted). According to the Court, the facts of the *GTE Sylvania* case did not concern the evils that the FOIA was intended to prevent because the CPSC was simply following a lawful court order. The same is true here. The Department is withholding the documents from Wagar not as a result of unbridled discretion but, rather, in accordance with the June 11, 1986, order issued by the district court presiding over the antitrust proceedings.[4]

---

**3.** The Supreme Court noted that it reached this conclusion even in light of the fact that there was separate litigation pending which dealt with the question of whether the Delaware district court had erred in issuing the permanent injunction.

**4.** We reiterate that the Department's memorandum in support of its motion to dismiss Wagar's complaint filed in this FOIA action states: "However, if the Court determines that the June 11, 1986 Order does not require destruction of the requested documents, *defendant is prepared*

Wagar has failed to show that the Department improperly withheld the documents, and has therefore failed to make the showing required to establish jurisdiction under the FOIA. *Kissinger*, 445 U.S. at 150, 100 S.Ct. at 968.

■ Wagar next argues that the June 11, 1986, nondisclosure order is void because it is not based upon a FOIA statutory exemption but, rather, upon the consent order entered into between the parties. This argument, however, is not supported by existing case law. First, the *GTE Sylvania* case recognizes that courts may issue nondisclosure orders and that agencies must comply with such orders. Nothing in *GTE Sylvania* supports the conclusion that the validity of nondisclosure orders depends upon whether they are based upon FOIA exemptions. Nor does Wagar cite any cases which support his argument. Contrary to the position taken by Wagar, in a case involving an appeal of an order placing certain documents under seal, this court has specifically stated: "We reject the argument that the District Court below should have limited its seal to those documents not available to individuals under the exemptions to the FOIA." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir.1983).

Finally, we note that Wagar is attempting to attack collaterally the June 11, 1986, order issued by the district court presiding over the antitrust proceedings. The various motions of Wagar, Kentucky Utilities, and the Department regarding the June 11, 1986, order are still pending in the antitrust proceedings, and the appropriate forum for Wagar's attack upon the validity of that order is with that district court.[5]

We therefore conclude that the court below properly dismissed the instant action based upon its finding that the June 11, 1986, order issued in the antitrust proceedings precluded the Department from producing the documents sought by Wagar in these proceedings brought under the FOIA.[6]

AFFIRMED.

COHN, District Judge, concurring.

I concur in Judge Guy's opinion, but write separately to suggest that it should be a rule of practice in this circuit that a Freedom of Information Act case, 5 U.S.C. § 552, that is directed to documents obtained during the course of discovery proceedings be assigned to the judge under whose authority the documents were initially produced. For analogous circumstances, see *In re: Grand Jury Proceedings*, 841 F.2d 1264 (6th Cir.1988).

---

*to release such documents* as defendant has determined that they are not subject to any of the FOIA exemptions found at 5 U.S.C. § 552(b)." (Footnote omitted; emphasis added).

**5.** The parties have agreed that there will be no destruction of the documents pending the ultimate determination of these issues by the dis-

trict court presiding over the antitrust proceedings.

**6.** Because we conclude that this case was properly dismissed by the district court, we find it unnecessary to address Wagar's claim that the district court erred by allowing Kentucky Utilities to intervene in this action.