UNITED STATES of America, Plaintiff,

v.

KENTUCKY UTILITIES COMPANY, Defendant.

Civ. A. No. 81–52.

United States District Court, E.D. Kentucky, Lexington Division.

Feb. 9, 1989.

Elizabeth A. Pugh, Terry Henry, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Thomas W. Miller, Lexington, Ky., for intervenor Lexington Herald–Leader.

Malcolm Y. Marshall, Louisville, Ky., for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge:

### INTRODUCTION

This matter comes before the court via a labyrinthine procedural route. After negotiating the labyrinth, the court holds that the issue is essentially whether the United States and the Kentucky Utilities Company have shown sufficient good cause to keep certain discovery documents produced in this antitrust suit shielded from public access.

This case is an antitrust suit, which was settled. Following the settlement, the Lexington Herald–Leader filed a motion to intervene, seeking the disclosure of discovery documents which Kentucky Utilities had turned over to the Department of Justice.

This matter is before the court on the intervenor Herald–Leader's motion to modify a portion of the settlement order of June 11, 1986, which ordered destruction of documents produced during discovery.

### FACTS

On March 31, 1981, the United States Department of Justice filed this action against the Kentucky Utilities Company [hereinafter KU] in Lexington, alleging violations of the antitrust laws. The matter was litigated for five years and extensive discovery took place. During that time, no protective orders were in place. In 1986, after extensive negotiations between the parties, the Department of Justice and KU agreed to settle the case. The parties prepared a Stipulation and Agreed Order in which they agreed to dismiss the case with prejudice, and presented the order to Judge Wilhoit, whose case it was at that time. Judge Wilhoit signed the order, and it was

entered on June 11, 1986. The order contained provisions for dismissal of the causes of action and apportionment of costs and expenses between the parties. It also included a provision requiring the Department of Justice to destroy most of the documents it had obtained from KU during discovery. That provision stated:

"It is further ordered that, within thirty days of entry of this Stipulation and Order, Plaintiff shall certify to the Defendant and to this Court, upon oath of its counsel, that it has destroyed all copies of documents obtained through discovery procedures herein, including copies made thereof by the certifying party, except that: (1) documents made exhibits to depositions and required to be maintained by ATR 2710.1 shall not be required to be destroyed, and (2) no documents subject to an outstanding request under the Freedom of Information Act ("FOIA") shall be required to be destroyed until the request and any related litigation over the request, including appeals, is resolved."

The record reveals no hearing with regard to the contents of the order prior to its signature by Judge Wilhoit. Nor was Judge Wilhoit asked to make any findings on a showing of good cause.

Upon learning of the dismissal of the action, Kit Wagar, a reporter for the Lexington Herald–Leader, sent a Freedom of Information Act [hereinafter FOIA] request to the Justice Department. The FOIA request asked for a variety of documents which had been obtained from KU by the Department of Justice through discovery. The request was mailed on June 16, 1986 and received by the Department of Justice on June 20, 1986. Although some of the requested documents had already been destroyed, the Department of Justice immediately stopped destruction of the documents upon receiving the request. At that date, less than 50 percent of the documents had been destroyed. On July 15, 1986, the Justice Department informed the court that some documents had been destroyed but that others which related to the FOIA request had not been destroyed.

On July 18, 1986, defendant Kentucky Utilities obtained an *ex parte* order that the Justice Department not produce to third parties documents obtained through discovery, pending a hearing on the production matter on July 25, 1986. On July 23, 1986, the Herald–Leader learned that the court was to hold a hearing on July 25 with regard to the ordered destruction of the documents. On July 24, 1986, the Herald–Leader and Kit Wagar moved to intervene and asked to be given access to the documents.

After the July 25 hearing, the court denied the motion to intervene without prejudice, but ordered that the Herald–Leader be kept informed of all further proceedings with regard to the documents. The court also stayed the June 11, 1986 order until October 15, 1986 to allow the Herald–Leader to pursue a FOIA request administratively. At the July 25 hearing, Judge Wilhoit directed the Herald–Leader to file a separate FOIA action against the Department of Justice.

On September 2, 1986, the Department of Justice filed a report with the court stating its preliminary determination that no FOIA exemptions applied to the Herald–Leader's request. Plaintiff also set out its determination that the provision in the June 11, 1986 order which prevented the destruction of documents "subject to an outstanding request under the [FOIA]" should be interpreted to include only FOIA requests received as of the date of entry of the June 11, 1986 order.

On September 5, 1986, the Herald–Leader filed in this antitrust action its first motion for an interpretation or amendment of the June 11 order to allow release of the documents that the Herald–Leader sought under the FOIA. Shortly thereafter, defendant KU moved that destruction of the discovery materials be completed pursuant to the terms of the June 11, 1986 order.

On December 17, 1986, a hearing was held on the pending motions. On December 18, 1986, Judge Wilhoit ordered that all unfiled depositions and appurtenant exhibits be filed, that the Herald–Leader file another action to determine its FOIA rights

in light of the June 11, 1986 order, and that plaintiff neither produce nor destroy the documents at issue pending the outcome of the separate FOIA action. The order also provided that if a separate FOIA action were not filed by December 20, 1986, the June 11, 1986 order was to become operative and the Department of Justice should recommence destroying the documents. Both parties completed the filing of depositions and exhibits with the court.

At the December 17 hearing, the Herald–Leader requested that the court clarify its June 11 order. The Herald–Leader argued that the order did not prevent the Department of Justice from responding to its FOIA request. Judge Wilhoit held that the interpretation of his order could best be resolved in the FOIA action. Order of January 9, 1987, Docket # 287. The Herald–Leader did not appeal either the December 18, 1986 order nor the January 9, 1987 order.

On December 19, 1986, the Herald–Leader filed a FOIA action against the Department of Justice in this court. *Wagar v. United States Department of Justice*, No. 86–418 (E.D.Ky.1986). In the FOIA case, the Department of Justice moved to dismiss. The Herald–Leader opposed the motion, and challenged the lawfulness of the June 11, 1986 order should the order be interpreted to allow the destruction of the documents which the Herald–Leader sought. Kentucky Utilities intervened in the FOIA action, joined in the Department of Justice's motion to dismiss, and filed its own motion to dismiss.

Following a hearing, the undersigned, to whom the FOIA action had been assigned, interpreted the June 11 order to preclude production of the documents by the Department of Justice in response to a FOIA request. I found that the Justice Department had not "illegally withheld" agency records, because it withheld the documents pursuant to court order.

On April 9, 1987, the Herald–Leader requested a temporary restraining order in this antitrust action preventing destruction of the documents. At the same time, the

Herald–Leader again moved to intervene in the antitrust action. A Stipulation and Order was entered on April 28, 1987, preventing destruction of the documents pending a ruling on the Herald–Leader's motion to intervene.

On June 19, 1987, the Herald–Leader again moved the court in this antitrust action (which was still before Judge Wilhoit) to amend the June 11, 1986 order. It requested that the court make findings with regard to whether the documents sought should be protected. It also argued that the Justice Department should be required to respond to any FOIA request filed prior to actual destruction of the documents sought.

On October 13, 1987, Judge Wilhoit passed all motions pending a ruling by the Sixth Circuit on the appeal in *Howes v. Atkins*, No. 83–279 (E.D.Ky.1987), which raised similar issues. That case is still pending in the Sixth Circuit Court of Appeals.

The Herald–Leader took an appeal in its FOIA action. The Sixth Circuit affirmed my dismissal of the FOIA action. *Wagar v. United States Department of Justice*, 846 F.2d 1040 (6th Cir.1988).

Judge Wilhoit recused himself in this antitrust case on April 18, 1988, and the case was reassigned to me. On September 19, 1988, I granted the Herald–Leader's motion to intervene and overruled all other pending motions as moot in favor of renewed briefing on the case.

On November 3, 1988, the Herald–Leader once again moved to amend the June 11, 1986 order. Both the plaintiff, the Department of Justice, and the defendant, Kentucky Utilities, oppose the intervenor's motion.

## ANALYSIS [1]

I. The Order of June 11, 1986 Requiring that the Discovery Documents be Destroyed Should be Treated as a Protective Order.

 The Justice Department and Kentucky Utilities point out that the documents

1. Certain issues raised in the briefs may be summarily dealt with.

to which the Herald–Leader seeks access are not in the court record. Therefore, they attempt to assume the posture of private parties who have settled a case and have a right of privacy in documents maintained outside the court record. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 679–80 (3d Cir.1988); *cf. Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Associates*, 800 F.2d 339 (3d Cir. 1986).

Here, however, the parties are not private parties. One of the parties is the federal government. The documents sought to be protected from disclosure are in its possession and would be required to be disclosed by the FOIA, but for the court order sought to be modified. It is the order of the court that is preventing disclosure. *See Wagar v. United States Department of Justice*, 846 F.2d 1040 (6th Cir. 1988).

The court has no quarrel with the principle that private parties who maintain notes and documents outside the record may maintain such documents as confidential after the case is over. *See Littlejohn, supra.* Here, however, since it is the order of the court that is preventing disclosure, the court believes that the same approach should be used as if the documents were in the record. Essentially, these documents are under the control of the court and the court holds that the same First Amendment considerations apply.

II. The Court is not Precluded from Modifying the Order of June 11, 1986 Because it is a Settlement Agreement.

The Justice Department and Kentucky Utilities argue that the order protecting the documents is a settlement order which may either be accepted or rejected by the court, but not modified. The United States Court of Appeals for the Sixth circuit has specifically held that the court is not bound by confidentiality agreements of this kind. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). In *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 144 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 344, 98 L.Ed. 2d 370 (1987), the appellate court approved the holding of Judge Weinstein of the Eastern District of New York that a trial court "has the power to order documents released even though they were sealed as

First, the Justice Department and the defendant argue that the Order of December 18, 1986 protecting the documents pending filing of a FOIA action is *res judicata.* In the view of the court, this is a spurious issue because that order reserved final action by the court pending the outcome of the FOIA action, which was ultimately resolved in the decision of the United States Court of Appeals for the Sixth Circuit in *Wagar v. Department of Justice*, 846 F.2d 1040 (6th Cir.1988). Clearly, the December 18, 1986 order was not a final order that could be the basis for a finding of *res judicata. See In re 1975–2 Grand Jury Investigation, Etc.*, 566 F.2d 1293, 1297 (5th Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978).

Second, the Justice Department and Kentucky Utilities also argue that I am bound through the "law of the case" doctrine by Judge Wilhoit's order requiring destruction of the documents. Clearly, this argument is also without merit. A federal district court may review and modify or amend its orders. *Kuenz v. Goodyear Tire & Rubber Co.*, 617 F.Supp. 11, 13 (N.D.Ohio 1985). A district court's ability to modify its own orders exists "as long as no final order has been issued." *Bailey v. Proctor*, 166 F.2d 392, 395 (1st Cir.1948). A transferee court may modify or

vacate an order made by the transferor. *In re: The Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 664 F.2d 114, 118–19 (6th Cir. 1981). In addition "the court has the power to modify or vacate an order previously entered in the same case by any judge to whom it was assigned and is not precluded from such action by 'law of the case' principles." *Kuenz*, 617 F.Supp. at 13–14. *See also Cale v. Johnson*, 861 F.2d 943 (6th Cir.1988); *In re The Upjohn Co.*, 664 F.2d at 118–19.

Further, Judge Wilhoit has stated in the record that he did not consider the First Amendment problems with which I am now confronted when he signed the June 11, 1986 Order at the request of the parties. Neither the Herald–Leader nor any other representative of the press was present to be heard at the time the order was signed.

The Justice Department and Kentucky Utilities not only should have anticipated but actually did anticipate an effort on the part of the press to obtain the documents that the order of June 11, 1986 required to be destroyed. Now that the press has intervened to raise First Amendment concerns, the court believes that the matter should be considered *de novo* to address these important issues.

part of a settlement agreement." *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 770 (E.D.N.Y.1984). *Accord Public Citizen v. Liggett Group*, 858 F.2d 775, 782 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *cf. Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir.1987). In *"Agent Orange"* Judge Weinstein also observed that "[a]ny party or interested person may move for such relief." 597 F.Supp. 740, 770 (E.D.N.Y.1984).

To give credence to the settlement agreement argument would be most inequitable and perhaps unconstitutional. The Justice Department and Kentucky Utilities knew full well the press and public had an interest in this case.[2] That is why their Agreed Order provided for the expedited destruction of documents and why the FOIA was mentioned in the order. The rights of the public should not be foreclosed by agreements of this kind. Such agreements should be considered to have only *prima facie* validity. When the court signs such an agreement, it does not know whether the press or public will seek access to the record or not.

Such agreements are routinely properly used in private litigation to protect trade secrets or legitimate privacy interests. When such an Order is signed, usually, as in this case, the busy trial judge is not in a position to balance the competing interests of privacy versus public access. All of the negotiations may have been done in private, and the trial judge may not even have a feel for the issues or the nature of the

case or documents. This is certainly true of confidentiality orders I have signed in other cases.

Therefore, confidentiality orders arrived at by the parties in the absence of the press and public, even though endorsed by the court, should not be given binding effect when a subsequent motion seeking access is filed. Rather, the court should perform the required balancing process at the time a subsequent motion by the press is made. *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 658 (D.D.C.1986); *cf. Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir.1987); *Sharjah Investment Co. (UK) Ltd. v. P.C. Telemart, Inc.*, 107 F.R.D. 81 (S.D.N.Y. 1985).

### III. "Good Cause" has not Been Shown for the Maintenance of the Protective Order.[3]

■ Any analysis on this subject must begin with the decision of the Supreme Court of the United States in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). This landmark decision involved the spiritual leader of a controversial religious group, who sued for libel on the basis of derogatory stories run concerning his activities. 467 U.S. at 22, 104 S.Ct. at 2202. During the course of extensive discovery, the plaintiff refused to disclose certain information such as the identity of donors and members of the religious group. *Id.* at 24, 104 S.Ct. at 2203. Although the action was in a state court, the state rules were virtually identical to Federal Rule of Civil Procedure 26(c).[4] *Id.*

**2.** "[A]ppellants doubtless were aware that, regardless of the settlement agreement ... such an agreement could not prevent interested non-class member parties from intervening to seek access to the discovery materials." *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 144 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987).

**3.** In *Public Citizen v. Liggett Group*, 858 F.2d 775, 791 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989), the court placed a burden on the movant to show a change of circumstance for modifying a protective order. Here, however, the Herald–Leader never had the opportunity to be heard on the

"good cause" requirement for entering the protective order in the first place. Therefore, the court holds the issue of protectability should be considered *de novo*. *Public Citizen* also held that the trial court could not require the filing of discovery documents once the case was over. *Id.* at 781. This court is not doing that here. Setting aside the protective order merely leaves the parties where the law finds them, in this case, subject to the FOIA.

**4.** That Rule reads in pertinent part:
 (c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alter-

at 30 n. 15, 104 S.Ct. at 2206 n. 15. The state trial court required production of the membership and donor lists but ordered that they be kept confidential. *Id.* at 25–27, 104 S.Ct. at 2203–2204. The defendant newspapers wished to disclose the information to the public. *Id.* The trial court held that privacy and associational interests of the members and donors involved outweighed any public interest in the activities of the religious sect. *Id.*

The newspapers ultimately argued to the Supreme Court of the United States that the information should be protected only upon a showing of a compelling governmental interest. *Id.* at 31, 104 S.Ct. at 2206. The Supreme Court rejected this position as "an unwarranted restriction on the duty and discretion of a trial court to oversee the discovery process." *Id.*

After balancing the privacy interests against the First Amendment interests, the Supreme Court held that where "a protective order is entered on a showing of good cause, as required by" F.R.Civ.P. 26(c) or a similar rule, and such order "is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37, 104 S.Ct. at 2209.

As part of its consideration of the privacy interests involved, the Court gave considerable weight to the fact that a litigant is frequently required to disclose to the adverse party and the court matters that, while relevant to the litigation, would otherwise be entitled to be kept confidential. *Id.* at 35, 104 S.Ct. at 2208. In other words, the press and public would not have access to the information but for the litigation. The court expressed its agreement with the Supreme Court of Washington that if all matters produced on discovery were required to be made public, some individuals "may well forego the pursuit of just claims." *Id.* at 36, 104 S.Ct. at 2209. The Court balanced the interests and found that the privacy interests prevailed over First Amendment concerns in that case.[5] *Id.* at 36–37, 104 S.Ct. at 2209.

In attempting to apply the rule of *Seattle Times* to this case, it should first be noted that there are some factual differences be-

---

natively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

**5.** As pointed out in the First Circuit, the Supreme Court did not hold in *Seattle Times* that First Amendment concerns were not implicated in the protective order, but that they were implicated to a lesser extent. This court agrees with the following synthesis of the holding of *Seattle Times:*

"The Supreme Court did not hold that the first amendment was not implicated at all when a protective order is issued. It held that the first amendment rights were implicated '*to a far lesser extent* than would restraints on dissemination of information in a different context.' *Seattle Times Co.,* 467 U.S. at 34, 104 S.Ct. at 2208 (emphasis added). The Court did not hold that a discovery protective order could never offend the first amendment. It held that the first amendment is not offended if three criteria are met: (1) there is a showing of good cause as required by Rule 26(c); (2) the restriction is limited to the discovery context; and (3) the order does not restrict the dissemination of information obtained from other sources. *Id.* at 37, 104 S.Ct. at 2209. In our opinion, this means that first amendment considerations cannot be ignored in reviewing discovery protective orders. Although the 'strict and heightened' scrutiny tests no longer apply, the first amendment is still a presence in the review process. Protective discovery orders are subject to first amendment scrutiny, but that scrutiny must be made within the framework of Rule 26(c)'s requirement of good cause."
*Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir.1986).

tween the two situations. First, it is not one of the parties who wishes to disclose the contents of the record but a third party, an agency of the media. The two original parties to the litigation agree that the information should be kept confidential.

Nevertheless, this distinction does not, in the view of the court, call for a different approach. *Seattle Times*, confirming as it does the model of the drafters of the Federal Rules of Civil Procedure, adopts a salutary balancing of the unavoidably conflicting interests of privacy and public access.[6] No reason appears why the rule of that case is not applicable here.

Thus, we come to the ultimate issue, whether there is a showing of good cause to maintain the confidentiality of the documents described in the June 11, 1986 order.

In the opinion of this court, little effort has been made on the part of the Justice Department and Kentucky Utilities to substantiate any showing of good cause. It is merely stated in a conclusory manner that settlements will be impeded if confidentiality cannot be guaranteed.

The court is unconvinced that this is an accurate statement, either generally or in this case. The parties obviously knew that efforts would be made to obtain these documents and that they might be successful. Yet, they settled anyway. In the experience of the court, settlements will be entered into in most cases whether or not confidentiality can be maintained. The parties might prefer to have confidentiality, but this does not mean that they would not settle otherwise. For one thing, if the case goes to trial, even more is likely to be disclosed than if the public has access to pretrial matters.[7] A generalized interest in promoting settlement is not enough.[8]

In the instant case, the nebulous and conclusory showing of cause for protecting the documents is offset by the strong legitimate public concern demonstrated by the intervening newspaper in this matter. First of all, one of the original parties is a public utility accused of illegal antitrust activities, which presumably, if they occurred, would have the effect of raising electric rates to the average consumer. Obviously, the public has a strong legitimate interest in being informed of the facts of any such activities. *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir.1987).

The other party is the federal government, the confidentiality of whose activities has already been diluted by the principles of the Freedom Of Information Act and the First Amendment. The public also has a legitimate concern in evaluating the fairness and wisdom of the federal government's settlement made in this important litigation.

Thus, it is clear to the court that sufficient good cause has not been shown by the original parties for maintaining the confidentiality of the documents protected by the order of June 11, 1986.[9] Therefore, pursuant to F.R.Civ.P. 26(c) and the doctrine of *Seattle Times, supra,* the confidentiality provisions of that Order will be rescinded by separate Order entered concurrently herewith.

IT IS SO ORDERED.

---

**6.** An excellent example of the balancing process may be found in *The Courier–Journal v. Marshall,* 828 F.2d 361 (6th Cir.1987). Privacy interests of the kind involved there are notably lacking in this record.

**7.** This is not to say that the court may not maintain the confidentiality of settlement *negotiations,* where the parties may be floating trial balloons and making admissions of various kinds, for purposes of discussion. Thus, the Sixth Circuit has held that a summary jury trial may be closed to the public. *Cincinnati Gas & Electric Co. v. General Electric Co.,* 854 F.2d 900, 903 (6th Cir.1988), *aff'g.* the decision of Judge

Spiegel in 117 F.R.D. 597 (S.D.Ohio 1987). The Federal Rules of Evidence specifically prohibit the admissibility of any statement made in the course of settlement negotiations. F.R.Ev. 408.

**8.** *Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Associates,* 800 F.2d 339, 346 (3d Cir.1986).

**9.** Where the materials are in the record, the Sixth Circuit has held that only a minimal showing is required to modify the protective order and permit disclosure. *Meyer Goldberg,* 823 F.2d at 163.