GTE SYLVANIA, INC., ET AL. *v.* CONSUMERS UNION
OF THE UNITED STATES, INC., ET AL.

No. 78–1248.   Argued November 28, 1979—Decided March 19, 1980

MARSHALL, J., delivered the opinion for a unanimous Court.

*Harry L. Shniderman* argued the cause for petitioners. With him on the briefs were *Bernard G. Segal, James D. Crawford, Deena Jo Schneider, Robert W. Steele, Alan M. Grimaldi, Stephen B. Clarkson, William F. Patten, D. Clifford Crook III, Burton Y. Weitzenfeld, Michael A. Stiegel, Nancy L. Buc, Peter Gartland,* and *J. Wallace Adair.*

*Deputy Solicitor General Geller* argued the cause for the federal respondents. With him on the brief were *Solicitor General McCree* and *Richard A. Allen.*

*Alan B. Morrison* argued the cause for respondents Consumers Union of the United States, Inc., et al. With him on the brief was *Diane B. Cohn.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the issue whether information may be obtained under the Freedom of Information Act, 5 U. S. C.

§ 552, when the agency holding the material has been enjoined from disclosing it by a federal district court.

## I

In March 1974, respondent Consumer Product Safety Commission (CPSC) announced that it would hold a public hearing to investigate hazards in the operation of television receivers and to consider the need for safety standards for televisions. 39 Fed. Reg. 10929. In the notice the CPSC requested from television manufacturers certain information on television-related accidents. After reviewing the material voluntarily submitted, the CPSC through orders, 15 U. S. C. § 2076 (b)(1), and subpoenas, 15 U. S. C. § 2076 (b)(3), obtained from the manufacturers, including petitioners, various accident reports. Claims of confidentiality accompanied most of the reports.

Respondents Consumers Union of the United States, Inc., and Public Citizen's Health Research Group (the requesters) sought disclosure of the accident reports from the CPSC under the Freedom of Information Act. The requesters were given access only to those documents for which no claim of confidentiality had been made by the manufacturers. As for the rest, the CPSC gave the manufacturers an opportunity to substantiate their claims of confidentiality. The requesters agreed to wait until mid-March 1975 for the CPSC's determination of the availability of those allegedly confidential documents.

In March 1975, the CPSC informed the requesters and the manufacturers that the documents sought did not fall within any of the exemptions of the Freedom of Information Act, and that even if disclosure was not mandated by that Act, the CPSC would exercise its discretion to release the material on May 1, 1975. Upon receiving the notice, petitioners filed suit in the United States District Court for the District of Dela-

ware and three other Federal District Courts,[1] seeking to enjoin disclosure of the allegedly confidential reports. Petitioners contended that release of the information was prohibited by § 6 of the Consumer Product Safety Act, 15 U. S. C. § 2055, by exemptions to the Freedom of Information Act,[2] and by the Trade Secrets Act, 18 U. S. C. § 1905. Petitioners sought temporary restraining orders in all of the actions, and the CPSC consented to such orders in at least some of the cases. Subsequently the manufacturers' individual actions were consolidated in the District of Delaware, and that court issued a series of temporary restraining orders. Finally, in October 1975 the Delaware District Court entered a preliminary injunction prohibiting release of the documents pending trial. *GTE Sylvania Inc.* v. *Consumer Product Safety Comm'n,* 404 F. Supp. 352 (1975).

The requesters did not seek to intervene in the Delaware action, nor did petitioners or the CPSC attempt to have the requesters joined. Instead, on May 5, 1975, the requesters filed the instant action in Federal District Court for the District of Columbia, seeking release of the accident reports under the Freedom of Information Act. Named as defendants in that suit were the CPSC, its Chairman, Commissioners,

---

[1] GTE Sylvania, Inc., RCA Corp., Magnavox Co., Zenith Radio Corp., Motorola, Inc., Warwick Electronics, Inc., and Aeronutronic Ford Corp. filed individual actions in the District of Delaware. Matsushita Electric Corp. of America, Sharp Electronic Corp., and Toshiba-America, Inc., filed actions in the Southern District of New York. General Electric Co. filed suit in the Northern District of New York. Admiral Corp. filed suit in the Western District of Pennsylvania. A 13th manufacturer, Teledyne Mid-America Corp., also brought suit, but that action was voluntarily dismissed. See *GTE Sylvania Inc.* v. *Consumer Product Safety Comm'n,* 438 F. Supp. 208, 210, n. 1 (Del. 1977).

[2] The theory of the so-called "reverse Freedom of Information Act" suit, that the exemptions to the Act were mandatory bars to disclosure and that therefore submitters of information could sue an agency under the Act in order to enjoin release of material, was squarely rejected in *Chrysler Corp.* v. *Brown,* 441 U. S. 281, 290–294 (1979).

and Secretary, and all of the petitioners. In September 1975, while the motion for a preliminary injunction was still pending in Delaware, the District Court for the District of Columbia dismissed the requesters' complaint. The court observed that the CPSC had determined that the reports should be disclosed and had assured the court on the public record that disclosure would be made as soon as the agency was not enjoined from doing so. The court concluded that there was no Art. III case or controversy between the plaintiffs and the federal defendants and therefore no jurisdiction. It also held that the complaint failed to state a claim against petitioners upon which relief could be granted since they no longer possessed the records sought by the requesters. Nor could petitioners be subject to suit under the compulsory joinder provision of Federal Rule of Civil Procedure 19 (a) since that Rule is predicated on the pre-existence of federal jurisdiction over the cause of action, which was not present here. *Consumers Union of United States, Inc.* v. *Consumer Product Safety Comm'n,* 400 F. Supp. 848 (DC 1975).

The United States Court of Appeals for the District of Columbia Circuit reversed. *Consumers Union of United States, Inc.* v. *Consumer Product Safety Comm'n,* 182 U. S. App. D. C. 351, 561 F. 2d 349 (1977). That court concluded that there was a case or controversy between the plaintiffs and the CPSC on "the threshold question of the scope and effect of the proceedings in Delaware." *Id.,* at 356, 561 F. 2d, at 354. In addition, the CPSC's conduct of the Delaware litigation was "not easily reconcilable with its ostensible acceptance of [the requesters'] argument that the requested documents should be disclosed." *Id.,* at 357, 561 F. 2d, at 355.[3] The Court of Appeals held that the preliminary in-

---

[3] The Court of Appeals noted that the CPSC took nine months from the date of the initial request for the documents to announce its determination that the material should be disclosed. In addition, the CPSC failed to make even *pro forma* opposition to the motions for temporary restraining orders and did not object to the manufacturers' requests for extensions of

junction issued by the Delaware court did not foreclose the requesters' suit under the Freedom of Information Act. That injunction did not resolve the merits of the claim, but instead was merely *pendente lite* relief. Thus, the order could not bar the Freedom of Information Act suit in the District of Columbia, although it would weigh in the decision as to which of the two suits should be stayed pending the outcome of the other. The court concluded, however, that such balancing was not required because the Delaware court had entered an order "closing out" that case without further action.[4] The Delaware action was effectively dismissed and therefore the preliminary injunction was "dead" and did not bar the Freedom of Information Act suit.[5] In addition, the CPSC's efforts in the Delaware action, which the court below considered "less than vigilant," and the resulting absence of full representation of the prodisclosure argument prevented the preliminary injunction from having preclusive effect.[6]

---

those orders. Finally, the CPSC moved to dismiss its own interlocutory appeal to the United States Court of Appeals for the Third Circuit, which motion was granted. 182 U. S. App. D. C., at 357, n. 27, 561 F. 2d, at 355, n. 27.

[4] The minute order entered by the Delaware District Court provided that "since the parties do not now know whether further action [after the grant of the preliminary injunction] is contemplated in this litigation, there is no need to maintain these cases as open litigation for statistical purposes." Accordingly, the Clerk of that court was ordered to "close these cases for statistical purposes." The entry specifically stated that "[n]othing contained herein shall be considered a dismissal or disposition of the matter and should further proceedings become necessary or desirable, any party may initiate in the same manner as if this minute order had not been entered." App. to Pet. for Cert. A108.

[5] On petition for rehearing the Court of Appeals was informed that the Delaware case had only been marked "closed" for statistical purposes and that in fact the Delaware case had become active again soon after the Court of Appeals' initial ruling. The court nevertheless concluded that "there appears no reason why the litigation should not proceed here," 184 U. S. App. D. C. 146, 147, 565 F. 2d 721, 722 (1977) (*per curiam*).

[6] The CPSC then moved the Federal District Court in Delaware to

The manufacturers filed a petition for writ of certiorari. While that petition was pending, the Delaware District Court granted the manufacturers' motion for summary judgment and permanently enjoined the CPSC from disclosing the accident data. *GTE Sylvania, Inc.* v. *Consumer Product Safety Comm'n,* 443 F. Supp. 1152 (1977). We granted certiorari, vacated the judgment of the Court of Appeals for the District of Columbia Circuit, and remanded the case "for further consideration in light of the permanent injunction" entered in Delaware. *GTE Sylvania, Inc.* v. *Consumers Union of United States, Inc.,* 434 U. S. 1030 (1978).

On remand, the Court of Appeals reaffirmed its holding that there was a case or controversy within the meaning of Art. III.[7] *Consumers Union of United States, Inc.* v. *Consumer Product Safety Comm'n,* 192 U. S. App. D. C. 93, 100, 590 F. 2d 1209, 1216 (1978). The court also held that the Delaware permanent injunction should not prevent the continuation of the District of Columbia action. *Stare decisis* would not require deference to the Delaware court's decision if it was in error. Collateral estoppel was inapplicable because the requesters were not parties to the Delaware action and an agency's interests diverge too widely from the private interests of Freedom of Information Act requesters for the agency to constitute an adequate representative. Finally, the prin-

---

transfer that litigation to the District of Columbia pursuant to 28 U. S. C. § 1404. This motion was denied on the grounds that the Delaware action was much further advanced than the District of Columbia suit and a transfer at that late date would only delay a decision on the merits. *GTE Sylvania Inc.* v. *Consumer Product Safety Comm'n,* 438 F. Supp. 208 (Del. 1977).

[7] The CPSC had initially taken the position before the Court of Appeals that there was no Art. III case or controversy. However, when the case was first before this Court the CPSC announced that it was now persuaded there was a case or controversy, and it has continued to hold that view throughout this litigation. See Brief for Federal Respondents 21, n. 10; *Consumers Union of United States, Inc.* v. *Consumer Product Safety Comm'n,* 192 U. S. App. D. C. 93, 100, n. 33, 590 F. 2d 1209, 1216, n. 33 (1978).

ciple of comity did not mandate a different result since the requesters were not before the Delaware court. The court below concluded that "none of the familiar anti-relitigation doctrines operates to deprive nonparty requesters of their right to sue for enforcement of the Freedom of Information Act; rather, they remain unaffected by prior litigation solely between the submitters and the involved agency." *Id.*, at 103, 590 F. 2d, at 1219. The case was remanded to the District Court for a decision on the merits. If that court concluded that the Freedom of Information Act required disclosure of the reports, it could consider enjoining petitioners from enforcing their final judgment awarded by the Delaware court.

We granted certiorari, 441 U. S. 942 (1979), because of the importance of the issue presented.[8] We now reverse.

## II

The threshold question raised by petitioners is whether there is a case or controversy as required to establish jurisdiction pursuant to Art. III. Petitioners urge here, as the District Court held below, that since the CPSC agrees with the requesters that the documents should be released under the Freedom of Information Act, there is no actual controversy presented in this suit. We do not agree.

The purpose of the case-or-controversy requirement is to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast* v. *Cohen,* 392 U. S. 83, 95 (1968). The clash of adverse parties " 'sharpens the presentation of issues upon which the court

---

[8] The United States Court of Appeals for the Third Circuit has affirmed the grant of the permanent injunction by the Federal District Court in Delaware, *GTE Sylvania, Inc.* v. *Consumer Product Safety Comm'n,* 598 F. 2d 790 (1979), and we have granted certiorari to review that judgment. *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 444 U. S. 979 (1979).

so largely depends for illumination of difficult . . . questions.' " *O'Shea* v. *Littleton,* 414 U. S. 488, 494 (1974), quoting *Baker* v. *Carr,* 369 U. S. 186, 204 (1962). See also *Flast* v. *Cohen, supra,* at 96–97. Accordingly, there is no Art. III case or controversy when the parties desire "precisely the same result," *Moore* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 47, 48 (1971) (*per curiam*). See also *Muskrat* v. *United States,* 219 U. S. 346, 361 (1911).

The CPSC and the requesters do not want "precisely the same result" in this litigation. It is true that the federal defendants have expressed the view that the reports in question should be released and in fact notified the District Court that absent the Delaware injunction the information would be disclosed. See 400 F. Supp., at 853, n. 14. That injunction has been issued, however, and the basic question in this case is the effect of that order on the requesters. The CPSC contends that the injunction prevents it from releasing the documents, while the requesters believe that an equitable decree obtained by the manufacturers in a suit in which those seeking disclosure were not parties cannot deprive them of their rights under the Freedom of Information Act. In short, the issue in this case is whether, given the existence of the Delaware injunction, the CPSC has violated the Freedom of Information Act at all. The federal defendants and the requesters sharply disagree on this question, as has been evidenced at every stage of this litigation. If the requesters prevail on the merits of their claim, the CPSC will be subject to directly contradictory court orders, a prospect which the federal defendants naturally wish to avoid. It cannot be said, therefore, that the parties desire "precisely the same result." The requirements of Art. III have been satisfied.[9]

---

[9] We need not reach the requesters' argument that the clear conflict between them and the petitioners would produce the necessary case or controversy even if there was no such controversy between the requesters and the federal defendants. We also need not discuss the suggestion of the Court of Appeals that the CPSC does not in fact agree with the re-

### III

The issue squarely presented is whether the Court of Appeals erred in holding that the requesters may obtain the accident reports under the Freedom of Information Act when the agency with possession of the documents has been enjoined from disclosing them by a Federal District Court. The terms of the Act and its legislative history demonstrate that the court below was in error.

The Freedom of Information Act gives federal district courts the jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U. S. C. § 552 (a)(4)(B). This section requires a showing of three components: the agency must have (1) improperly (2) withheld (3) agency records. *Kissinger* v. *Reporters Committee for Freedom of the Press, ante,* at 150. In this case the sole question is whether the first requirement, that the information has been "improperly" withheld, has been satisfied.

The statute provides no definition of the term "improperly." The legislative history of the Act, however, makes clear what Congress intended. The Freedom of Information Act was a revision of § 3, the "public information" section, of the Administrative Procedure Act, 5 U. S. C. § 1002 (1964 ed.). The prior law had failed to provide the desired access to information relied upon in Government decisionmaking, and in fact had become "the major statutory excuse for withholding Government records from public view." H. R. Rep. No. 1497, 89th Cong., 2d Sess., 3 (1966) (hereinafter H. R. Rep. No. 1497). See also *id.,* at 4, 12; S. Rep. No. 813, 89th Cong., 1st Sess., 3, 5 (1965) (hereinafter S. Rep. No. 813); *EPA* v. *Mink,* 410 U. S. 73, 79 (1973). Section 3 had several vague phrases upon which officials could rely to refuse requests for disclosure: "in the public interest," "relating solely to the in-

---

questers that the documents should be disclosed even absent the Delaware injunction. See n. 3, *supra.*

ternal management of an agency," "for good cause." Even material on the public record was available only to "persons properly and directly concerned." These undefined phrases placed broad discretion in the hands of agency officials in deciding what information to disclose, and that discretion was often abused. The problem was exacerbated by the lack of an adequate judicial remedy for the requesters. See generally H. R. Rep. No. 1497, at 4–6; S. Rep. No. 813, at 4–5; 112 Cong. Rec. 13642, reprinted in Freedom of Information Act Source Book, 93d Cong., 2d Sess., 47 (Comm. Print 1974) (remarks of Rep. Moss) (hereinafter Source Book); id., at 52 (remarks of Rep. King); id., at 71 (remarks of Rep. Rumsfeld); EPA v. Mink, supra, at 79.

The Freedom of Information Act was intended "to establish a general philosophy of full agency disclosure," S. Rep. No. 813, at 3, and to close the "loopholes which allow agencies to deny legitimate information to the public," ibid. The attention of Congress was primarily focused on the efforts of officials to prevent release of information in order to hide mistakes or irregularities committed by the agency. Ibid.; H. R. Rep. No. 1497, at 6; Source Book 69 (remarks of Rep. Monagan); id., at 70 (remarks of Rep. Rumsfeld); id., at 73–74 (remarks of Rep. Hall), and on needless denials of information. Examples considered by Congress included the refusal of the Secretary of the Navy to release telephone directories, the decision of the National Science Foundation not to disclose cost estimates submitted by unsuccessful contractors as bids for a multimillion-dollar contract, and the Postmaster General's refusal to release the names of postal employees. See H. R. Rep. No. 1497, at 5–6.

Thus Congress was largely concerned with the unjustified suppression of information by agency officials. S. Rep. No. 813, at 5. Federal employees were denying requests for documents without an adequate basis for nondisclosure, and Congress wanted to curb this apparently unbridled discretion. Source Book 46–47 (remarks of Rep. Moss); id., at 61 (re-

marks of Rep. Fascell); *id.*, at 70 (remarks of Rep. Rumsfeld); *id.*, at 71 (remarks of Rep. Skubitz); *id.*, at 80 (remarks of Rep. Anderson). It is in this context that Congress gave the federal district courts under the Freedom of Information Act jurisdiction to order the production of "improperly" withheld agency records. It is enlightening that the Senate Report uses the terms "improperly" and "wrongfully" interchangeably. S. Rep. No. 813, at 3, 5, 8.

The present case involves a distinctly different context. The CPSC has not released the documents sought here solely because of the orders issued by the Federal District Court in Delaware. At all times since the filing of the complaint in the instant action the agency has been subject to a temporary restraining order or a preliminary or permanent injunction barring disclosure. There simply has been no discretion for the agency to exercise. The concerns underlying the Freedom of Information Act are inapplicable, for the agency has made no effort to avoid disclosure; indeed, it is not the CPSC's decision to withhold the documents at all.

The conclusion that the information in this case is not being "improperly" withheld is further supported by the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order. See *Howat* v. *Kansas,* 258 U. S. 181, 189–190 (1922); *United States* v. *Mine Workers,* 330 U. S. 258 (1947); *Walker* v. *City of Birmingham,* 388 U. S. 307, 314–321 (1967); *Pasadena City Bd. of Education* v. *Spangler,* 427 U. S. 424, 439 (1976). There is no doubt that the Federal District Court in Delaware had jurisdiction to issue the temporary restraining orders and preliminary and permanent injunctions. Nor were those equitable decrees challenged as "only a frivolous pretense to validity," *Walker* v. *City of Birmingham, supra,* at 315, although of course there is disagreement over whether the District Court erred in

issuing the permanent injunction.[10] Under these circumstances, the CPSC was required to obey the injunctions out of "respect for judicial process," 388 U. S., at 321.

There is nothing in the legislative history to suggest that in adopting the Freedom of Information Act to curb agency discretion to conceal information, Congress intended to require an agency to commit contempt of court in order to release documents. Indeed, Congress viewed the federal courts as the necessary protectors of the public's right to know. To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as "improperly" withholding documents under the Freedom of Information Act would do violence to the common understanding of the term "improperly" and would extend the Act well beyond the intent of Congress.

We conclude that the CPSC has not "improperly" withheld the accident reports from the requesters under the Freedom of Information Act.[11] The judgment of the United States Court of Appeals for the District of Columbia Circuit accordingly is

*Reversed.*

---

[10] We intimate no view on that issue, which is raised in *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* No. 79–521, cert. granted, 444 U. S. 979 (1979).

[11] We need not address the issue whether the principle of comity mandated that the District of Columbia court stay or dismiss the action because the Delaware court had jurisdiction over the manufacturers' suit prior to the filing of the requesters' complaint.