**Jack D. McNAMARA, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. P–96–CA–050.**

United States District Court,
W.D. Texas,
Pecos Division.

Dec. 6, 1996.

Jack D. McNamara, Alpine, TX, pro se.

Stephen G. Jurecky, U.S. Attorney's Office, El Paso, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

FURGESON, District Judge.

(1) GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF A *VAUGHN* INDEX

(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

(3) DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

(4) DENYING DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF THE IMMIGRATION AND NATURALIZATION SERVICE

(5) REQUIRING THE IMMIGRATION AND NATURALIZATION SERVICE TO SHOW CAUSE CONCERNING:

(1) THE LOSS OF PLAINTIFF'S REQUEST

### (2) THE DESTRUCTION OF DOCUMENTS

This case was inspired by a lengthy series of events culminating in the arrest, prosecution and conviction of Richard Dee Thompson and Glynn Robert Chambers for drug related offenses. It was filed when Plaintiff, the publisher of the *Nimby News*, a watchdog newspaper dedicated to tracking the drug war in West Texas, was unsuccessful in his request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et. seq. Plaintiff's request, in the form of a letter to the Attorney General of the United States dated October 14, 1994, asked for information on the "operation and subsequent prosecution of a narcotics conspiracy directed by Robert Glynn Chambers of Presidio and Brewster counties; and former Presidio County Sheriff Richard (Rick) Dee Thompson between January 1986 and the present (October 14, 1994)." The request made clear that Plaintiff was especially interested in the information which disclosed "agency procedures and the working[s] of government." He asked that the search be conducted within the following agencies: U.S. Marshals Service (USMS), Immigration and Naturalization Service (INS), Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Executive Office of U.S. Attorneys and "such other offices as maintain liaison with other law enforcement agencies and intelligence agencies." By law, any federal agency receiving a FOIA request has ten days (excepting Saturdays, Sundays, and legal public holidays) to make a determination whether or not the request can be filled, or to notify the requester of his right to appeal. *See* 5 U.S.C. § 552(a)(6)(A)(i). For reasons that are unexplained and thus unclear, the Attorney General failed to meet this timeframe in this case.

The FBI was the first agency to respond. In a letter dated November 30, 1994, the agency informed Plaintiff that his request could not be processed unless he submitted either proof of death or a privacy waiver from Thompson and Chambers. According to the FBI, without proof of death or a privacy waiver, confirmation of the existence, or the disclosure, of any documents would constitute an unwarranted invasion of personal privacy. Furthermore, according to the FBI, any such documents, if they did exist, would be exempt from disclosure pursuant to FOIA exemptions § 552(b)(6) and (b)(7)(C). The Executive Office of U.S. Attorneys filed its response on December 5, 1996. In it, the EOUSA stated that it could provide Plaintiff with copies of public court records and news clippings only. However, as concerned non-public records, if any were located, they would be exempt from disclosure under the same two FOIA exemptions claimed by the FBI, § 552(b)(6) and (b)(7)(C). The DEA was next to respond. In a letter dated January 19, 1996, the DEA stated that it could neither confirm nor deny the existence of any records responsive to Plaintiff's request, unless Plaintiff could provide either proof of death or an original notarized authorization (privacy waiver) from both Chambers and Thompson. The DEA's response made clear that unless proof of death or a privacy waiver was provided, confirming the existence of records on any individual was considered an unwarranted invasion of privacy. The letter concluded that such records would, in any event, be exempt from disclosure under § 552(b)(6) and/or (b)(7)(C), the exact same exemptions claimed by both the FBI and the EOUSA.[1] The United States Marshals Service was last to respond. Their response came on February 1, 1995. In it, the USMS stated that no records responsive to Plaintiff's request were located. No response was ever filed by the INS. Finally, no agency other than the FBI, DEA, USMS, and the EOUSA undertook a search of their files pursuant to Plaintiff's request.

In a letter dated April 24, 1995, Plaintiff appealed the categorical withholding of all information to the Office of Information and Privacy (OIP). In this appeal, Plaintiff voiced concern that no response ever came from the INS and that it was improper to categorically assert a privacy interest on be-

---

1. Since at this stage the court is only concerned with the question of jurisdiction, it will not pass on the merits of the claimed exemptions until after the *Vaughn* Index is produced.

half of individuals about whom information was sought. The FOIA provides that all appeals are to be resolved within 20 days of their receipt. 5 U.S.C. § 552(a)(6)(A). Again, this timetable was not met. Documents before this court show that on June 27, 1995, Plaintiff once more wrote the OIP inquiring as to why his appeal had not been processed. While Plaintiff's letter was on its way to the OIP, a letter from the OIP was on its way to Plaintiff. Prepared by Richard L. Huff, Co–Director of the OIP, the letter advised Plaintiff that his information requests from the five agencies (FBI, DEA, USMS, INS and EOUSA) had been assigned tracking numbers and that Plaintiff would be notified of the outcome of his appeal concerning the withholding of records by the FBI, the DEA and the EOUSA in due course. Regarding Plaintiff's request to the USMS, Mr. Huff determined that its response (that no records responsive to Plaintiff's request were located) was correct and that Plaintiff could consider this a denial of his appeal and could proceed with his claim to federal court. Mr. Huff also informed Plaintiff that Plaintiff's request had been forwarded to the INS. No reason was given for INS's non-response. While Mr. Huff acknowledged that Plaintiff could treat the failure of the INS to respond within the statutorily required time as a denial of his request and could therefore appeal to federal court, he implored Plaintiff to take into account the lack of personnel resources to conduct record reviews in a timely manner. Plaintiff did not immediately file suit in federal court. Instead, he wrote back to Mr. Huff on July 12, 1995 politely objecting to the narrowing of his original request to only the five agencies (FBI, DEA, INS, USMS, and EOUSA) and to only Thompson and Chambers. Mr. Huff never directly addressed Plaintiff's concerns.

The denials of Plaintiff's appeals came sporadically over a period of several months. On August 9, 1995, Plaintiff's appeal from the actions of the EOUSA was denied by the OIP. On February 27, 1996, Plaintiff's appeal from the actions of the DEA was denied, and on March 18, 1996, the same result was attained from the actions of the FBI. Plaintiff's appeal from the actions of the USMS was originally denied on June 29, 1996. Over this period of time, no mention was ever made of whether the INS was trying to comply with Plaintiff's request. Thus, almost a year and half after he submitted his initial letter, Plaintiff had finally exhausted his administrative remedies. Irrespective of the merits of Plaintiff's request, the court is baffled by how openly FOIA's time limits were thwarted by all agencies involved, including the OIP. While the court is aware that agencies may be overburdened by requests which may make it impossible to comply with the strict time limits set forth in FOIA, delaying the final resolution of a request for almost a year and a half seems clearly unjustified. A clear mandate of Congress was simply ignored in this instance. Having no further administrative recourse, Plaintiff turned to this court for redress.

Several months after Plaintiff's petition for injunctive relief was filed, Defendant, the United States Department of Justice, filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. A week later, Defendant filed a Supplemental Response (sic) to the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. This supplemental motion was filed only on behalf of the INS. Plaintiff then filed his own Motion for Summary Judgment and a Motion to Compel the Production of a *Vaughn* Index. Because this court cannot proceed with the case until it decides whether or not it has jurisdiction under 5 U.S.C. § 552(a)(4)(B), it will deny Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, as prematurely filed. The parties may reurge these motions on the court at the appropriate time. The court, however, will grant Plaintiff's Motion for the Production of a *Vaughn* Index, since without it, the court cannot decide the question of subject matter jurisdiction. Finally, the court will also deny as prematurely filed Defendant's Supplemental Motion to Dismiss or, in the alternative for Summary Judgment filed on behalf of the INS. That Motion may be reurged after the INS complies with a show cause order, details of which are outlined below.

## ANALYSIS

■■■ The FOIA confers jurisdiction on district courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). The law is clear that under this provision, "federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.' " *United States Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112, 124 (1989) (citing *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980)). Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements. *Tax Analysts*, 492 U.S. at 142–43, 109 S.Ct. at 2846–47, 106 L.Ed.2d at 124. The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not "agency records" or have not been "improperly" "withheld." *Id.* at 142–43 n. 3, 109 S.Ct. at 2846–47 n. 3, 106 L.Ed.2d at 124 n. 3 (citations omitted). The government does not contend that any records which may exist are not "agency records." Nor does the government argue that the records have not been "withheld." The primary point of contention, then, is whether the records were withheld "improperly."

■■■ The United States Supreme Court considered the question of when a document is "improperly" withheld in *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). Recognizing that "improperly" was not defined in the statute, the Supreme Court turned to legislative history to gleam the intent of Congress. In *Tax Analysts*, the Supreme Court summarized its holding in *GTE Sylvania, Inc.* Prior to the passage of the FOIA, Congress grew concerned that employees of federal agencies had too much discretion in deciding what information to release pursuant to requests. In enacting FOIA, Congress intended "to curb this apparently unbridled discretion" by "clos[ing] the 'loopholes which allow agencies to deny legitimate information to the public.' " (internal citations omitted). Toward this end, Congress formulated a system of clearly defined exemptions to the FOIA's otherwise mandatory disclosure requirements. An agency must disclose agency records to any person under § 552(a), "unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass.... [T]he exemptions are explicitly exclusive.

*Tax Analysts*, 492 U.S. at 150–51, 109 S.Ct. at 2851, 106 L.Ed.2d at 129. Thus, unless a withheld document falls within one of the nine enumerated exemptions, it has been improperly withheld. It is worth remembering that it is incumbent upon the government to prove that the exemptions apply and not upon the requester to prove that they do not.

■■■ Defendant has provided declarations along with its Motion to Dismiss or, in the alternative for Summary Judgment from the FBI, DEA, EOUSA and USMS, explaining to the court what exemptions are applicable to the documents requested, if any in fact exist. The declarations categorically state that disclosure of the documents would constitute a clearly unwarranted invasion of privacy. During oral argument on these various motions, counsel for Defendant argued strenuously that once the privacy exemptions are claimed by a federal agency, 5 U.S.C. § 552(b)(6) and (b)(7)(C), the court is powerless to find otherwise. In other words, according the to the Defendant, the court must accept the government's word that the documents cannot be disclosed. That, however, is not the law. To accept the government's position would be to clearly thwart the intent of Congress. The FOIA was passed in the first place because prior law "placed broad discretion in the hands of agency officials in deciding what information to disclose, and that discretion was often abused." *GTE Sylvania, Inc.*, 445 U.S. at 385, 100 S.Ct. at 1201, 63 L.Ed.2d at 476. The problem was exacerbated by the lack of an adequate judicial remedy for the requesters. *Id.* If the court is unable to verify whether or not existing documents fall within a given exemp-

tion, requesters are no better off than they were before the passage of FOIA. The question, then, becomes how a court can verify whether the exemptions claimed by the government apply to the documents withheld from disclosure. This is where the *Vaughn* Index comes in.[2]

■ Having gotten its name from the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), the *Vaughn* Index is a mechanism, short of disclosing the documents themselves, by which the court can satisfy itself that the documents being withheld from disclosure do indeed fall within one of the enumerated exemptions. The *Vaughn* Index also gives the requester an opportunity to advocate to the court that some, parts of some, or all of the documents do not fall within an exemption, contrary to the position taken by a governmental agency. The court in *Vaughn* recognized that

> In light of [the] overwhelming emphasis upon disclosure, it is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. Obviously the party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure. In many, if not most, disputes under the FOIA, resolution centers around the factual nature, the statutory category, of the information sought. *Vaughn*, 484 F.2d at 823.

It is also worth quoting the following passage from *Vaughn:*

> In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information; . . . .

Here the Government contends that the documents contain information of a personal nature the disclosure of which would constitute an invasion of certain individuals' privacy. This factual characterization may or may not be accurate. It is clear, however, that appellant cannot state that, as a matter of his knowledge, this characterization is untrue. Neither can he determine if the personal items, assuming they exist, are so inextricably bound up in the bulk of the documents that they cannot be separated out. The best appellant can do is to argue that the exception is very narrow and plead that the general nature of the documents sought make it unlikely that they contain such personal information. *Id.* at 823–24.

■ The court could not have summarized Plaintiff's plight any better. Nowhere in the declarations provided by the FBI, DEA, USMS and EOUSA is the court enlightened, even vaguely, as to the content of the withheld documents. From the information provided, there is no way for the court to tell whether some, a portion of some, or all the documents being withheld fall within any of the exemptions claimed. It cannot be overemphasized that an entire document is not exempt merely because an isolated portion need not be disclosed. *See Vaughn*, 484 F.2d at 825. The agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct, with regard to part of the information. *Id.* Fifth Circuit case law is clear that "in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit." *Stephenson v. IRS*, 629 F.2d 1140, 1145 (5th

---

2. It should be noted that an *in camera* inspection is a poor substitute for a *Vaughn* Index. Congress did not intend for a court to review in camera every record an agency withholds. *Church of Scientology of Texas v. IRS*, 816 F.Supp. 1138, 1147 (W.D.Tex.1993). A *Vaughn* Index relieves a court of this burden. *Id.* It allows a court to effectively and efficiently evaluate whether a withheld record is exempt; informs a court what information is contained in a withheld record so that the court can determine *de novo* if the record is in fact exempt; and gives the requester a meaningful opportunity to contest the agency's claim of exemption. *Id.* The *Vaughn* Index, however, does not completely do away with *in camera* inspections. If, after its production, the court is unable to determine whether or not a certain document, or portions of that document, fall within an exemption, it may still order an *in camera* inspection of that document. For now, however, the court will forgo ordering such an inspection pending the production of the Index.

Cir.1980). Thus, this court would clearly be remiss if it were to permit Defendant to withhold documents simply based upon the declarations of the several agencies that the documents in their possession are categorically exempt from disclosure. Instead, the DEA, FBI,[3] EOUSA and USMS[4] must provide this court with a *Vaughn* Index by January 31, 1997. The Index provided by each agency must adequately describe each record within its possession responsive to Plaintiff's request, state what exemption the agency claims and explain why the agency believes the record falls within the exemption. *Church of Scientology of Texas v. I.R.S.*, 816 F.Supp. 1138, 1147 (W.D.Tex. 1993). The agency does not have to describe a record to the extent that the description compromises its secrecy. *Id.* A description is sufficient if it enables a court to reach its own conclusion as to what is in the record. *Id.* Mere conclusory and generalized statements that a record falls within an exempt category, however, are insufficient. *Id.* Finally, since an entire record is not exempt simply because a portion of it is, the *Vaughn* Index should make clear whether the government claims an exemption for the entire document or only a portion.

**3.** In its declaration attached to Defendant's Motion to Dismiss or, in the alternative for Summary Judgment, the FBI stated that it could neither confirm nor deny the existence of any records responsive to Plaintiff's request, as that in itself would be an unwarranted invasion of privacy. The FBI went on to say, that even if they did have records responsive to Plaintiff's request, those records would not be released because Plaintiff failed to meet any one of the exceptions to non-disclosure of documents. The FBI stated that it could release documents to Plaintiff only if:

 (a) the subject of the request is deceased;
 (b) the subject of the request has provided an appropriate privacy waiver allowing the release of the information to the requester;
 (c) the DOJ has officially acknowledged the existence of the records; or
 (d) when the publics interest in disclosure outweighs any privacy interest.

The FBI is not *per se* exempt from FOIA. It is unclear how these internal criteria for release of information are proper under FOIA. What is clear, however, is that counsel for Defendant could not point this court to any provision within FOIA, or any place else, exempting the FBI from

Having ordered the production of the *Vaughn* Index by the FBI, DEA, USMS, and EOUSA, the question now becomes what the proper scope of that Index is. Plaintiff clearly requested information pertaining to the drug conspiracy involving Chambers and Thompson, including any information that sheds light on the workings of government. Plaintiff contends, however, that the OIP impermissibly narrowed his request to those two individuals and excluded others. In his Motion for Summary Judgment, as well as during oral argument, Plaintiff brought to light the names of all individuals contained in the narrative attached to Plaintiff's October 14, 1994 request. Those individuals can be categorized into the following groups: individuals presently deceased, individuals who are current or former public officials, individuals who have been indicted, convicted, and are serving time in U.S. or Mexican prisons, individuals who are journalists, and individuals who are confidential informants. Without going into detail as to who each of these individuals are, the court finds that the individuals whose names are contained in the narrative attached to Plaintiff's request, other than Thompson and Chambers, were not part of the searchable universe, information on whom had to be retrieved by the agencies.

disclosing information not specifically exempted by one of the nine provisions contained in § 552(b). Nor could the court find any statute or rule that allows the FBI to develop its own internal screening mechanism for the release of information sought pursuant to FOIA. Unless Defendant can point the court to specific statutory provisions, or specific C.F.R. sections, providing otherwise, then the FBI must comply with this order and must file a *Vaughn* Index for all documents responsive to Plaintiff's request.

**4.** There is conflicting information as to whether the U.S. Marshals Service has any information responsive to Plaintiff's request. On the one hand, Plaintiff received a letter on February 1, 1995, informing him that the USMS has no records responsive to his request. On the other hand, in a declaration attached to Defendant's Motion to Dismiss or, in the alternative for Summary Judgment, the USMS stated that it had administrative records pertaining to Thompson and Chambers, but that those records were exempt from disclosure under § 552(b)(7)(C). Thus, if the USMS does indeed have records responsive to Plaintiff's request, whether administrative or otherwise, it is ordered to produce a *Vaughn* Index in the form set forth in this order.

The same, however, cannot be said about the unilateral narrowing of the federal agencies to which Plaintiff's request was sent. It is clear that Plaintiff's request should have been sent to the DEA, USMS, INS, FBI, and EOUSA. The discussion of whether or not the request was ever sent to the INS is reserved for later. However, Plaintiff also requested that the search be conducted in "such offices as maintain liaison with other law enforcement agencies and intelligence agencies." Plaintiff concedes that this request is vague. However, no effort was made on the part of Defendant to determine who those agencies could be. The court now finds that Plaintiff's request, at a minimum, encompassed the following agencies, and orders these agencies to process Plaintiff's original request pursuant to FOIA: Office of the Attorney General, Deputy Attorney General, Associate Attorney General, Criminal Division, Office of Intelligence Policy and Review, INTERPOL, Office of Justice Programs, and Office of Public Affairs. The court is aware that many other FOIA requests, in addition to Plaintiff's, may be pending before these agencies. However, due to the fact that Plaintiff's request has taken two years to reach this stage, the agencies are urged to stick within the strict response times set forth in § 552(a)(6)(A)(i). Defendant is ordered to forward Plaintiff's request to the abovelisted agencies immediately upon receipt of this order. Plaintiff's request will be considered denied by any agency, giving Plaintiff all of the rights under the statute, if no response is returned within 30 days of the entry of this order. While no response needs to be filed with the court, the court nevertheless requests that a courtesy copy of each response be sent to it by Defendant. As previously discussed, the search can be limited solely to information concerning Thompson and Chambers, and not the other individuals listed in Plaintiff's narrative.

Finally, the court takes up the question of INS's untimely response. Plaintiff's October 14, 1994 request specified that the files of the INS were to be searched for information concerning the drug conspiracy between Thompson and Chambers. Not having received any response, Plaintiff notified the OIP of that fact in his June 27, 1995 letter. In subsequent correspondence from Mr. Huff, the co-director of the OIP, Plaintiff was assured that his request had been forwarded to the INS. However, it is the position of the INS that it did not receive Plaintiff's request until August 7, 1996, almost two years after it was made. It filed its response on August 20, 1996, denying the existence of any records responsive to Plaintiff's request. This complete breakdown, internal or otherwise, raises serious concerns. Whether the INS deliberately failed to respond to Plaintiff's request, or did so by accident, because of a mistake by it or another agency, the end result is the same: documents responsive to Plaintiff's request may have been lost or destroyed.

Another matter of serious concern must also be noted. Exhibit 10 to Defendant's Supplemental Motion to Dismiss or, in the alternative for Summary Judgment is a short letter from Douglas M. Kruhm, the Sector Chief of the Border Patrol, to Diane Flores Biggs, a Paralegal Specialist with the OIP. In it, Mr. Kruhm states that not only does the Border Patrol have no information in its files responsive to Plaintiff's request, but that "except for policy documents, [it] is permitted to purge [its] files every three years and, therefore, ha[s] retained no documents prior to 1993." Had Plaintiff's request been timely acted upon, Plaintiff may have been able to access documents which are now no longer in existence. Moreover, it is unclear under what authority the Border Patrol, and more specifically the INS, destroys certain records in its possession every three years.

 Federal government records are to be disposed of only in accordance with the Records Disposal Act (FRDA), 44 U.S.C. §§ 3301, 3314. While there are no statutorily mandated time limits as to how long documents are to be retained, there is caselaw to the effect that destruction within a seven year period may be impermissible. *See, e.g., Armstrong v. Executive Office of the President,* 1 F.3d 1274 (D.C.Cir.1993). The FRDA, the Federal Records Act (FRA) and federal regulations allow agencies to develop internal guidelines for document retention and destruction. The court is sensitive to

the fact that the amount of paperwork generated by the INS may require a shorter retention period. However, unwittingly, federal law may have been violated in this case. Therefore, the INS is ordered to show this court under what authority it, and its agencies, can destroy records every three years. The INS is also ordered to explain to this court how this particular Freedom of Information Act request could have gotten lost, when it was reportedly forwarded to the INS on at least two separate occasions, in October of 1994 and June of 1995. A detailed description of the procedures employed to handle such requests should be included in any explanation. As stated *supra*, Defendant's Motion to Dismiss or, in the Alternative for Summary Judgment filed on behalf of the INS is premature for consideration until the INS responds to this order, and will therefore be denied. An answer should be filed no later than January 17, 1997. The gravity of this mishap cannot be overstated. Defendant may reurge the Motion on behalf of the INS after the INS has responded to the show cause order. Therefore,

It is ORDERED that Plaintiff's Motion to Compel the Production of a *Vaughn* Index be GRANTED.

It is ORDERED that the following agencies prepare and file a *Vaughn* Index in accordance with this order by January 31, 1997: Drug Enforcement Administration, Federal Bureau of Investigation, United States Marshals Service, and Executive Office of United States Attorneys.

It is ORDERED that Defendant forward Plaintiff's information request to the following agencies: Office of the Attorney General, Deputy Attorney General, Associate Attorney General, Criminal Division, Office of Intelligence Policy and Review, INTERPOL, Office of Justice Programs, and Office of Public Affairs.

It is ORDERED that the aforementioned agencies process Plaintiff's request within the strictures of FOIA and send their response no later than 30 days after the entry of this Order.

It is ORDERED that Plaintiff's Motion for Summary Judgment be DENIED as prematurely filed.

It is ORDERED that Defendant's Motion to Dismiss or, in the alternative for Summary Judgment and Supplemental Motion to Dismiss or, in the Alternative for Summary Judgment as to the INS be DENIED as prematurely filed.

It is ORDERED that the Immigration and Naturalization Service SHOW CAUSE, no later than January 17, 1997, under what authority it can dispose of records every three years.

Finally, it is ORDERED that the Immigration and Naturalization Service explain, no later than January 17, 1997, how Plaintiff's request could have gotten lost, when it was sent to the agency on at least two separate occasions.