**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JASON WHITE,

    Plaintiff - Appellant,

v.

CITY OF ALBUQUERQUE; J. MCRAE;
J. RICHARDS; ROBERT MEZTGER,

    Defendants - Appellees.

No. 15-2045
(D.C. No. 1:12-CV-00988-MV-KBM)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

The district court dismissed this pro se action in the middle of trial after lesser sanctions proved ineffective in curbing plaintiff Jason White's repeated violations of the court's orders and the rules of evidence. Following several unsuccessful motions for reconsideration, Mr. White now appeals the dismissal, which we affirm as an appropriate exercise of the district court's discretion, *see Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002) ("We review for an abuse of discretion the district

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court's decision to impose the sanction of dismissal for failure to follow court orders and rules."). Mr. White also purports to challenge various decisions issued earlier in the case, including a partial grant of summary judgment for defendants on some of his constitutional claims. But, "[b]ecause we conclude that the district court did not abuse its discretion by dismissing [Mr. White's] action as a sanction for [his] improper actions, we affirm its judgment without reaching the merits of [his] claims." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176 (10th Cir. 2009); *see, e.g.*, *Rueb v. Zavaras*, 532 F. App'x 831, 834 (10th Cir. 2013) (declining to review interlocutory orders preceding dismissal of action as sanction); *Gross v. Gen. Motors LLC*, 441 F. App'x 562, 566 (10th Cir. 2011) (same).[1]

A very short summary of the events underlying the case will suffice to put the issues on appeal in context. This action arose out of an incident that occurred outside a nightclub in Albuquerque, New Mexico, in September 2009. The nightclub was hosting an event for persons eighteen years of age and older. Mr. White's car had been parked in front of the nightclub for some forty-five minutes when the manager spoke with defendant Albuquerque Police Commander J. McRae to express concern that the male sitting inside the car might be attempting to pick up one of the young

---

[1] In this vein, we also note that any disagreement with earlier orders of the district court would not excuse Mr. White's noncompliance. As summarized in *Lundahl v. Halabi*, 600 F. App'x 596 (10th Cir. 2014), the Supreme Court has repeatedly held that a litigant must promptly obey court orders unless and until they are reversed—and in the latter event, reversal does not retroactively excuse prior disobedience. *Id.* at 605 (discussing *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 386 (1980); *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947); and *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922)).

female patrons. Commander McRae approached the car and asked Mr. White to roll down the driver's side window (the extent to which the window was already lowered is a matter of dispute). Mr. White refused. More police officers, including two other named defendants, arrived. Mr. White alleged that he was ordered out of the car at gun point and, after asking to see the officers' badges and attempting to photograph them, was handcuffed, beaten, tasered, and arrested without probable cause. Mr. White subsequently sued the officers and the City, alleging violations of his First and Fourth Amendment rights.

## DISTRICT COURT PROCEEDINGS

This appeal is not about the merits of Mr. White's disputed claims. It is about his repeated noncompliance with court orders and rules and the appropriateness of the district court's ultimate decision to dismiss the case in the middle of trial after lesser sanctions proved ineffective. We therefore provide a detailed account of Mr. White's misconduct, particularly that occurring during trial, which should leave little doubt about the reasonableness of the district court's response.

Dismissal as a sanction first came up before trial, when defendants moved to dismiss on the basis of Mr. White's failure to comply with various pretrial orders. While agreeing that Mr. White had failed to abide by numerous orders regarding scheduling and discovery, the district court concluded dismissal was not at that time warranted under the relevant factors set out in our seminal sanction case, *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). *See* R. Vol. 3 at 1588-89.

3

The misconduct that later led the district court to impose increasingly severe sanctions against Mr. White, culminating in dismissal of his case, occurred during the first three days of trial. To appreciate the significance of some of that misconduct, it is helpful to bear in mind a few evidentiary rulings made in anticipation of trial. First, the district court granted two motions in limine: (1) excluding, for irrelevancy and/or prejudice under Fed. R. Evid. 401 and 403, evidence relating to Mr. White's arrest, detention in jail, and criminal prosecution, because these events did not form the basis for any of the claims then remaining to be tried; and (2) barring, on grounds of hearsay and irrelevancy, any reference to a Department of Justice report and associated settlement with the City of Albuquerque regarding an investigation of the City's police department (DOJ report). *See* R. Vol. 3 at 1490-95. Second, the district court excluded, on various procedural grounds, virtually all of the exhibits on Mr. White's trial list, and also made it clear that any other exhibits not specifically included in the list would not be permitted. *See id.* at 1590-93.

The upshot of these rulings, and the hearsay nature of other evidence that Mr. White wished to use, was that his case would be limited largely to his own testimony—as the district court took pains to impress upon him the first day of trial. *See* R. Supp. Vol. 1 at 120-23. At that time, after Mr. White indicated his intent to testify about excluded matters, the district court expressly warned him that "[y]ou can't get into any evidence that I've ruled inadmissible. If you do that and I find it intentional, I'm going to be obligated to impose sanctions, which can be anything from a verbal reprimand, to dismissing your case with prejudice, to holding you in

4

contempt of court." *Id.* at 121. The district court specifically cited the excluded DOJ report in this regard. *See id.* at 123. The rest of the first day was spent on jury selection and other procedural matters.

On the second day of trial, just before commencement of proceedings before the jury, the district court reminded Mr. White of the prior discussion about excluded evidence and reiterated its warning about sanctions. R. Supp. Vol. 2 at 133-34; *see also id.* at 182, 191 (additional similar warnings). Despite these specific warnings, the district court had to admonish Mr. White for referring to excluded and inadmissible evidence, including the DOJ report, throughout the day. *See id.* at 151, 169-70; 173, 175, 178-82, 186, 231-32, 234, 243, 270-71. This was not Mr. White's only inappropriate conduct that day. He also repeatedly (1) interrupted the trial judge (and witnesses and counsel) after being admonished not to do so, *see id.* at 192, 194, 220, 230-32, 240-41, 269, 282, 298-99; and (2) improperly testified while examining witnesses after being admonished not to do so, *see id.* at 191, 204-06, 208-10, 284. All of which prompted this very clear and explicit warning:

> You have continuously, throughout the course of the day, disregarded the rules of the Court. You've continuously gotten into irrelevant evidence. You've continuously testified when you shouldn't have, and you've continuously talked over people.
>
> That's going to stop. The next time you violate any rule that I've already warned you about, I'm going to fine you $100. If that does not fix your behavior, the fine will increase. Eventually I will get to a point, if you continue, where I will consider monetary sanctions are not sufficient to control your behavior and have you comport with the rules [of] decorum and I will dismiss your case. You have been warned under Tenth Circuit precedent as to what could happen.

*Id.* at 299.

5

The same pattern of inappropriate conduct continued on the third day of trial. Within a short time, Mr. White repeatedly referred to inadmissible evidence, at one point doing so in three successive questions. *See* R. Supp. Vol. 3 at 363, 365. The district court responded with its first sanction:

> Mr. White, I'm holding you in civil contempt of court for your repeated violation of this Court's orders. You just asked three questions that were improper that I've ruled upon in the past, that I've overruled with respect to witnesses yesterday.
>
> You continue to argue with me in front of the jury. You continue to talk over me when I speak. And you continue to make snide comments and huffing and puffing when you don't like an answer. And, consequently, I'm fining you $100. If you violate again . . . I'm going to double that fine to $200. After that, I'm going to consider striking your pleadings and closing your case as a sanction.

*Id.* at 366. Mr. White was not deterred. He continued to interrupt the trial judge, *see, e.g.*, *id.* at 439, 488, improperly testify while examining witnesses, *see id.* at 367, 371, 376, 440, 446-47, and, most importantly, refer to inadmissible evidence, including the DOJ report, *see id.* at 400-01, 422-23, 436, 472, 483, 491.

A patently improper attempt to discuss a non-present witness and imply that his absence was a function of intimidation by defendants provoked another monetary sanction. At the start of trial, Mr. White told the court he would not be calling a certain witness (Mr. Bickham) he had included on his list. He claimed the witness was "apparently hiding because he's fearful of having to appear in court to testify." R. Supp. Vol. 1 at 26. When Mr. White alluded to the witness during his opening statement, the district court admonished him not to discuss any witness who would not be testifying. *See* R. Supp. Vol. 2 at 153. On the third day of trial, Mr. White

6

attempted not only to discuss what the witness would have said but to suggest to the jury that the witness was not present out of fear of retaliation by defendants. The blatant and obdurate effort by Mr. White to get this improper innuendo before the jury is reflected in this exchange:

> MR. WHITE [testifying]:   Mr. Bickham witnessed the entire event. I saw him and his cousin, because his cousin has a phone shop. Mr. Bickham had mentioned to me --
>
> THE COURT:   No, that's hearsay. You can't say what Mr. Bickham said --
>
> MR. WHITE:   But he saw --
>
> THE COURT:   or the person in the phone shop.
>
> MR. WHITE:   Well, that's -- he saw the whole thing. That's the reason why I requested that Mr. Bickham --
>
> THE COURT:   Hold on. Mr. Bickham is not going to testify in the case.
>
> MR. WHITE:   I know that, but I asked him to be a witness. And he --
>
> THE COURT:   That's irrelevant. He's not here.
>
> MR. WHITE:   The reason he's not here --
>
> THE COURT:   Wait a minute. You --
>
> MR. WHITE:   -- is because he's fearful.
>
> THE COURT:   You're to disregard that. Take the jury out please.

R. Supp. Vol. 3 at 466. Defendants immediately moved to strike any reference to Mr. Bickham and requested either monetary sanctions or dismissal of the case. *Id.* at 467-68. The district court stopped short of dismissing the case; instead it instructed the jury to disregard any reference to Mr. Bickham and explained that his absence was a function of noncompliance with discovery disclosure obligations. *Id.* at 469,

7

471. The district court also fined Mr. White $200 and gave him this last, unequivocal warning:

> Now if you do something again that I consider to be an intentional violation of my rules, I'm going to dismiss your case with prejudice. I have never done that in 15 years on the bench. . . . You are the first litigant that I have ever had to sanction three times.[2] The next time, I'm going to dismiss your case with prejudice.
>
> Is there any part of my ruling that I've made any time that you don't understand? Because I'm going to hold you to all of the rulings. Hearsay is not admissible. The police report is not admissible. The department of justice report is not admissible. . . .
>
> [Y]ou understand the next time, if I find you violating one of my rules intentionally, or a rule of evidence intentionally, I'm going to dismiss your case with prejudice, meaning you can't bring it again. And you can take that issue up with the court of appeals.

*Id.* at 469-70.

A short time later, while being cross-examined about a prior charge for assault and battery on a police officer, Mr. White brought up an unrelated incident in which he sued an Albuquerque police officer (not named as a defendant here) whom he claimed had threatened his life. When asked about the outcome of that lawsuit, he admitted the officer was exonerated, but then gratuitously added: "But that was before the DOJ stepped in and did their investigation on [the Albuquerque Police Department.]" *Id.* at 491. The district court immediately cleared the courtroom and took up defendants' motion to dismiss in light of this latest blatant effort to interject the excluded DOJ report into the case. In response, Mr. White argued only that he

---

[2] The district court had also sanctioned Mr. White that day for arriving late to a post-lunch jury instruction conference. The court indicated he would be required to compensate opposing counsel for their time. *See* R. Supp. Vol. 3 at 454. Evidently, in light of ensuing events, counsel did not pursue the matter further.

"didn't say it intentionally." *Id.* at 493. The district court was not persuaded by this self-serving excuse:

> Well, the question to you was, you took the case [against the other police officer] to court, didn't you? And your answer was . . . something about the DOJ report. That has nothing to do with the question you were asked. Instead, you volunteered something that, in my view, was clearly designed to prejudice the defendants in this case and get the DOJ report before this jury, when I ruled multiple times and admonished you multiple times that it simply was not admissible.

*Id.*

The district court went on to address the factors governing dismissal as a sanction, which include (1) degree of prejudice to the defendant; (2) amount of interference with the judicial process; (3) culpability of the litigant; (4) advance warning of dismissal as a likely sanction; and (5) efficacy of lesser sanctions. *See Gripe*, 312 F.3d at 1188 (summarizing *Ehrenhaus* factors). As for prejudice, the judge noted Mr. White "has repeatedly got before this jury hearsay information that is not admissible. He's interjected the [DOJ] report. He's interjected hearsay testimony. In statements regarding [Mr.] Bickham, he made it appear as though Mr. Bickham was being hidden as a witness from this jury." R. Supp. Vol. 3 at 496. As for interference with the judicial process, the judge stated "in 15 years as a judge and . . . 20-some years before that as a lawyer, I have never seen a litigant engage in such obstructive and contumacious behavior as Mr. White has. . . . I suspect that in the past two days, I've probably had to rule against him more than 100 times, or admonish him that many times regarding his inappropriate behavior in this case." *Id.* As for culpability, the judge explained "anyone reading this record would see that I

9

have bent over backwards to warn him in advance to try to get him to not obstruct the proceedings. His statement that these actions were not intentional are belied by [his reference to the DOJ report in answer to] the last question asked by [defendants' counsel,] . . . which was completely nonresponsive to [the] question." *Id.* at 496-97. As for warning that dismissal was a likely sanction, the judge noted the same multiple warnings we have referred to above. Finally, as for lesser sanctions, the judge recounted his various unsuccessful efforts to curb Mr. White's contumacious behavior and professed: "I've tried everything I can. I've talked to him, I've warned him, I fined him. That hasn't worked. Consequently, it is the discretion of this Court, and I'm going to dismiss his case with prejudice against all defendants in this case." *Id.* at 497.

### DISPOSITION OF APPEAL

As noted at the outset, we review the district court's dismissal solely for abuse of discretion. "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (internal quotation marks omitted). We discern no such deficiency in the district court's ruling. On the contrary, we concur in its assessment of Mr. White's conduct and its ultimate choice of the sanction appropriate to that conduct. Accordingly, with the addition of some comments below regarding the few issues raised by Mr. White on appeal that are

10

relevant to the dismissal sanction (see generally footnote 1, *supra*), we affirm the district court's ruling for substantially the reasons it stated on the trial record.

Mr. White contends dismissal was unfair because he did not receive copies of the pretrial orders excluding various exhibits and prohibiting references to the DOJ report until the night before the third day of trial. This objection is utterly disingenuous. As recounted above, throughout trial—beginning on the first day, before evidentiary proceedings even commenced—the district court repeatedly reminded Mr. White of the substance of its exclusion rulings (and specifically the prohibition on referring to the DOJ report) and warned him of the consequences of disregarding of them. To suggest that his obdurate disregard of the court's evidentiary rulings, reflected in the summary of the trial proceedings above, was the result of excusable ignorance strains all credibility.[3] In a related and similarly meritless vein, Mr. White now contends he "was unaware that the 'DOJ' could not be mentioned at all." Aplt. Op. Br. at 9. He was not admonished and sanctioned for simply mentioning the DOJ, but for attempting to interject the DOJ's report of its investigation of the Albuquerque Police Department into the case.

---

[3] Addressing this same objection about belated receipt of pretrial orders advanced by Mr. White in a motion for reconsideration, the district court also noted that it had given him additional copies of the orders in person after discussing them during a jury instruction conference on the first day of trial. *See* R. Vol. 3 at 1639, 1641. In his appellate brief, Mr. White refers to an affidavit in which he disputes this. He provides no record citation for this affidavit, saying only that it is "attached." Aplt. Op. Br. at 7. No affidavit is attached to his brief. And we note that the transcript appears to bear out the district court's recollection of events. *See* R. Supp. Vol. 1 at 120-21. We need not resolve this collateral point given the patent notice Mr. White had of the relevant rulings throughout trial as discussed above.

11

Mr. White further argues that, however improper his references to the DOJ investigation and report might have been, defendants suffered no prejudice from them. He insists "the jurors were already aware of the DOJ's investigation of the defendants' employer the Albuquerque Police Department, [because] this information was talked about by both the jurors and the Judge during VOIR DIRE questioning." *Id.* at 9. For this assertion he cites, unhelpfully, "Court transcripts." *Id.* That is clearly not adequate record support for an appellate argument, and it is not this court's obligation to rectify the deficiency. *See Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990). Nevertheless, we deem it worth correcting Mr. White's misstatement of the record: the voir dire transcript contains no discussion of the DOJ investigation and report.[4]

Mr. White also objects to a reference by the district court to his tardiness, especially his late appearance at the 1:00 pm jury instruction conference for which he was sanctioned on the third day of trial. Although tardiness was not a major factor in the district court's dismissal sanction, Mr. White's objection in this regard should be corrected. As for the jury instruction conference, he contends the district court told him to return at 1:30 pm. This contention is refuted by the trial transcript, which plainly reflects the district court telling Mr. White to return for more discussion of the jury instructions at 1:00 pm. *See* R. Supp. Vol. 3 at 453. The record also reflects

---

[4] We further note that the district court did not rely solely on the improper DOJ references when discussing the prejudice from Mr. White's misconduct during trial. The district court also cited, in particular, Mr. White's inappropriate and potentially very prejudicial efforts to suggest to the jury that he had an eyewitness who would not appear at trial to testify for him out of fear of retaliation from defendants.

12

his belated appearance on the morning of the first day of trial, *see* R. Supp. Vol. 1 at 22, 24, 29, and the morning of the third day of trial, *see* R. Supp. Vol. 3 at 349, 351. The district court committed no error in its consideration of Mr. White's tardy appearances for trial.

Nothing else in Mr. White's appellate briefing presents an effective challenge to the sanction of dismissal imposed by the district court. As that ruling is dispositive of the case, we are left to affirm.

The judgment of the district court dismissing the action with prejudice as a sanction is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge